# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| ESTATE OF VIRGIL VICTOR BECKER, JR., by its Personal Representative, Jennifer L. White, | ) ) ) ) | No. 72416-9-I |
| Appellant, | ) ) | |
| v. | ) ) ) | |
| FORWARD TECHNOLOGY INDUSTRIES, INC., | ) ) ) | PUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: December 28, 2015 |
| | ) | |

VERELLEN, A.C.J. — The scope of implied field preemption in aviation law is evolving and elusive. But under recent Ninth Circuit case law, the key consideration is whether the area at issue is pervasively regulated.

This action arises from a fatal airplane crash linked to a defective carburetor float. The primary question on appeal concerns implied field preemption of state tort standards of care applicable to the contractor who assembled the float.

The Federal Aviation Act (FAA) broadly regulates the area of aviation safety.[1] The FAA's regulatory scheme requires manufacturers of airplane engines and their components to obtain certificates from the Federal Aviation Administration approving their design and manufacture. Here, Avco Corporation, a type certificate holder, built

---

[1] 49 U.S.C. §§ 44701-44735.

the airplane's engine. Precision Airmotive Corporation, a "parts manufacturer approval" (PMA) holder, built the carburetor and its component parts, including the float. Precision contracted with Forward Technology Industries (FTI) to assemble and weld the float's component parts. The FAA and related regulations do not require FTI to hold a certificate or permit for this work.

In addition to suing Avco and Precision on a variety of theories, the Estate of Virgil Becker (Becker) sued FTI, alleging state causes of action for strict liability, negligence, and breach of warranty.

This appeal raises the narrow question whether the FAA and regulations adopted by the Federal Aviation Administration pervasively regulate the area of aircraft fuel systems, thereby preempting any state standard of care for defects in the assembly and welding of the carburetor float as to claims against FTI, a noncertificated contractor.[2] We conclude the FAA and related regulations pervasively regulate the "area" of an airplane engine's fuel system, including carburetors and their component parts. Therefore, implied field preemption bars the state tort standards of care alleged against FTI. Because Becker cites no compelling authority for an applicable parallel federal

---

[2] This appeal does not present any question regarding the viability of manufacturing defect claims brought against a certificate or PMA holder. See, e.g., Godfrey v. Precision Airmotive Corp., 46 So.3d 1020, 1023 (Fla. Dist. Ct. App. 2010) ("[I]f FAA regulations require an airplane engine manufacturer to report known engine defects to the public, this disclosure requirement would necessarily include a duty to disclose a known defect in a carburetor or other part certified by the engine manufacturer for use with the engine that will cause the engine itself to fail."); Petra L. Justice & Erica T. Healey, Why Non-Final GARA Denials Deserve Certiorari Review: "When Your Money is Gone, That is Permanent, Irreparable Damage to You," 42 STETSON L. REV. 457, 480 n.169 (2013) ("Under FAA regulations, an engine manufacturer can be held liable for defects in the carburetor by virtue of being the type certificate holder of the engine." (citing 14 C.F.R. §§ 21.11-21.55)).

2

standard of care, the claims against FTI fail.

We affirm the trial court's order dismissing all claims against FTI.

## FACTS

In July 2008, an airplane crashed in the Cascades near McMurray, Washington. The pilot, Brenda Houston, her daughter, Elizabeth Crews, and Dr. Virgil Becker all died in the crash.

Becker sued multiple defendants involved in the manufacture and care of the airplane. As to FTI, Becker alleged state law strict liability, negligence, and breach of warranty causes of action.

The Federal Aviation Administration issues a "type certificate" when it has found that an airplane is "properly designed and manufactured" and meets minimum federal safety standards.[3] The Federal Aviation Administration issued a type certificate to Avco, authorizing Avco to manufacture the airplane's engine. A type-certificated product (e.g., an engine) often includes component parts (e.g., a carburetor) purchased from outside suppliers. A certificate holder must establish procedures for ensuring the quality and conformity of all components integrated in the certificated product.[4] Once a type certificate is issued, the certificate holder may seek a production certificate authorizing the holder to manufacture a duplicate of the certificated product.[5] Avco

---

[3] 49 U.S.C. § 44704(a)(1); Hetzer-Young v. Precision Airmotive Corp., 184 Ohio App. 3d 516, 522, 921 N.E.2d 683 (2009) (the certification process ensures that "the aircraft meets the minimum standards for performance and safety" set forth by the Federal Aviation Administration).

[4] 14 C.F.R. § 21.137.

[5] 49 U.S.C. § 44704(c).

obtained the type certificate by ensuring that the engine "conforms to its approved design and is in a condition for safe operation."[6]

The airplane's engine included a carburetor built by Precision. The carburetor's function is to deliver an appropriate mixture of fuel and air to the engine. Precision obtained a PMA from the Federal Aviation Administration that permitted Precision to build and supply carburetors and their component parts to Avco. As a PMA holder, Precision was required to ensure that "each PMA article conforms to its approved design and is in a condition for safe operation."[7] Precision developed the plastic carburetor float which helps maintain the correct fuel level in the carburetor, and the Federal Aviation Administration approved it.

Precision contracted with FTI to assemble and weld the float's plastic component parts. Precision provided FTI with the float components. Using its own test specification, Precision independently tested every float it installed in a carburetor or sold as a replacement part. FTI conducted its own testing of the floats and knew some floats did not pass Precision's testing. FTI knew Precision used the floats for airplane engines, but did not know that any defective floats were installed on airplanes.[8]

---

[6] 14 C.F.R. § 21.146(c).

[7] 14 C.F.R. § 21.316(c).

[8] Contrary to Becker's arguments, although FTI knew the floats it welded "were going onto aircraft engines" and some of the floats that FTI sold to Precision were defective, FTI did not know that those defective floats were being installed on aircraft engines. Appellant's Br. at 11; see Clerk's Papers (CP) at 125 ("[FTI] did not know . . . that a certain amount of defective carburetor floats were out there in the field on aircraft engines."); CP at 1897 ("I did not know that [Precision was] selling those specific [defective] carburetor floats. I don't know what became of them once [Precision] delivered [them] to [its] customer[s].").

4

Becker's second amended complaint is limited to three state law causes of action against FTI based upon a state law standard of care.[9]

FTI sought summary judgment, arguing that federal law preempts the state law standard of care for all of Becker's claims, that FTI is not liable under the Washington Product Liability Act, chapter 7.72 RCW, because it is not a product seller or manufacturer, and that Becker's negligence claim fails because the risk that leaky floats would end up in the field was unforeseeable. The trial court granted FTI summary judgment and dismissed all of Becker's claims, concluding that "federal aviation law and concomitant federal regulations preempt state law standards of care."[10]

Becker filed a motion for reconsideration, arguing for the first time that FTI waived the federal preemption defense by failing to timely raise it. The trial court denied

---

[9] Becker's strict liability claim alleged that FTI "created a defective and unsafe product . . . in that the design, manufacture, assembly, testing, marketing, installing, selling and delivery of the subject product and/or components thereof were unreasonably dangerous" and that the design and construction of the carburetor float "was not in compliance with specific mandatory government specifications relating to safe design and construction, including the Federal Aviation Regulations (14 CFR *et seq*)." CP at 76-77. Becker's negligence claim alleged (1) the plane crash "was caused by the negligence, carelessness, and recklessness" of FTI, and that the carburetor float was "negligently, carelessly and recklessly designed, manufactured, assembled, tested, installed, marketed, sold, and delivered"; (2) FTI "negligently overhauled, rebuilt, supplied parts for, sold, and/or maintained" the carburetor float, and "failed to warn of known defects and/or unreasonably safe aspects" of the carburetor float; and (3) FTI "failed to issue proper and adequate warnings, guidelines, instructions, and cautions related to the maintenance and use" of the carburetor float; it was therefore "not reasonably safe." CP at 77-78. Becker's breach of warranty claim alleged FTI "warranted" that the carburetor float was "airworthy, of merchantable quality, fit and safe for purposes for which [it] was designed, manufactured, assembled, tested, marketed, sold, maintained, overhauled, and rebuilt, and [was] free of defects[,] and that the guidelines, instructions, cautions and warnings pertaining to the use of the [carburetor float] were proper, sufficient, adequate and complete." CP at 78-79.

[10] CP at 666 (citing Montalvo v. Spirit Airlines, 508 F.3d 464, 473 (9th Cir. 2007)).

that motion. Becker also sought to file a third amended complaint as to all defendants, which the trial court granted except as to FTI.

After the trial court dismissed FTI on summary judgment, six defendants remained. Four of the six defendants were voluntarily dismissed before trial. In July 2013, Becker voluntarily dismissed Avco upon reaching a settlement during trial. One year later, on July 10, 2014, Becker also voluntarily dismissed the Estate of Brenda Houston, the last remaining defendant, by stipulated order. The trial court entered a final judgment on August 1, 2014. Becker filed a notice of appeal on August 28, 2014.

## ANALYSIS

### Implied Field Preemption

Becker contends the FAA and related regulations do not preempt state law standards of care in airplane product liability and negligence actions involving a defective carburetor float. We disagree.

We review a summary judgment order de novo, performing the same inquiry as the trial court.[11] We view the facts and all reasonable inferences in the light most favorable to the nonmoving party.[12] Summary judgment is proper if there are no genuine issues of material fact.[13]

Congress adopted the FAA to create a "uniform and exclusive system of federal regulation" in the area of aviation safety and commerce.[14] The FAA gave the Federal

---

[11] McDevitt v. Harborview Med. Ctr., 179 Wn.2d 59, 64, 316 P.3d 469 (2013).

[12] Fulton v. State, Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

[13] Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013).

[14] City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 639, 93 S. Ct. 1854, 36 L. Ed. 2d 547 (1973).

Aviation Administration the authority to establish minimum standards "for the design, material, construction, quality of work, and performance of aircraft, *aircraft engines*, and propellers."[15]

Congressional intent is the touchstone of preemption.[16] We must assume that "Congress does not intend to supplant state law."[17] "State laws are not superseded by federal law unless that is the clear and manifest purpose of Congress."[18] The FAA has no express preemption clause, and FTI does not assert any implied conflict preemption. Therefore, only implied field preemption is at issue.[19]

Field preemption "exists when federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'"[20] The comprehensiveness of federal law in a field and "pervasiveness of the regulations" are "indication[s] of preemptive intent."[21] Where an agency promulgates "'regulations to carry out the purposes of a statute,'" we "'must consider

---

[15] 49 U.S.C. § 44701(a)(1) (emphasis added).

[16] Wyeth v. Levine, 555 U.S. 555, 565, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009).

[17] N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995).

[18] Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 327, 858 P.2d 1054 (1993).

[19] Two statutory amendments "added limited preemption provisions," neither of which apply here. Martin ex rel. Heckman v. Midwest Express Holdings, Inc., 555 F.3d 806, 808 (9th Cir. 2009). First, in 1978, the Airline Deregulation Act preempted any statutes or regulations "related to a price, route or service" of airlines. Id. (citing 49 U.S.C. § 41713(b)(1)). Second, in 1994, the General Aviation Revitalization Act adopted an 18-year statute of repose for product liability claims against airplane manufacturers. Id. (citing 49 U.S.C. § 40101).

[20] Montalvo, 508 F.3d at 470 (quoting Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)).

[21] Id.

whether the regulations evidence a desire to occupy a field completely'" to the exclusion of state law.[22] The purpose of implied field preemption under the FAA is to advance the goal of uniform standards in the field of aviation safety and commerce.[23]

In this setting, implied field preemption first turns on the critical question of the "area" of aviation safety at issue. Federal circuit courts "have generally analyzed FAA preemption by looking to the pervasiveness of federal regulations *in the specific area* covered by the tort claim or state law at issue."[24] We then consider whether there are pervasive regulations governing the area at issue.[25]

The Ninth Circuit decision in Martin ex. rel Heckman v. Midwest Express Holdings, Inc. is instructive.[26] A woman fell from an airplane's stairs. She sued the airline and the airplane's manufacturer, alleging that the stairs were defectively designed because they had only one handrail. In determining the specific area at issue for purposes of field preemption, the Ninth Circuit analyzed airplane stairs in general, not merely handrails for stairs.[27] The Martin court concluded:

> Airstairs are not pervasively regulated; the only regulation on airstairs is that they can't be designed in a way that might block the emergency exits. 14 C.F.R. § 25.810. The regulations have nothing to say about handrails, or even stairs at all, except in emergency landings. No federal regulation prohibits airstairs that are prone to ice over, or that tend to collapse under passengers' weight. The regulations say nothing about maintaining the stairs free of slippery substances, or fixing loose steps before passengers catch their heels and trip. It's hard to imagine

---

[22] Id. at 470-71 (quoting R.J. Reynolds Tobacco Co. v. Durham County, 479 U.S. 130, 149, 107 S. Ct. 499, 93 L. Ed. 2d 449 (1986)).

[23] Ventress v. Japan Airlines, 747 F.3d 716, 721 (9th Cir. 2014).

[24] Martin, 555 F.3d at 809 (emphasis added).

[25] Gilstrap v. United Air Lines, Inc., 709 F.3d 995, 1006-07 (9th Cir. 2013).

[26] 555 F.3d 806 (9th Cir. 2009).

[27] Id. at 811-12.

that any and all state tort claims involving airplane stairs are preempted by federal law. Because the agency has not comprehensively regulated airstairs, the FAA has not preempted state law claims that the stairs are defective.[28]

If "pervasive regulations" govern a specific area of aviation safety, implied preemption applies, but *only to that particular area*.[29] Because federal regulations did not establish any requirements for airplane stairs, the Martin court held that federal law did not preempt state tort claims involving airplane stairs.[30]

We conclude the specific area at issue here is the engine's fuel system, which includes the carburetor and its component parts. We also conclude airplane engine fuel systems are pervasively regulated. Unlike Martin, where federal regulations had "nothing to say about handrails, or even stairs at all,"[31] there are many federal regulations focused upon performance and safety standards for engine fuel systems, including the carburetor and its component parts. These regulations include:

- 14 C.F.R. § 33.35(a) ("The fuel system of the engine must be designed and constructed to supply an appropriate mixture of fuel to the cylinders throughout the complete operating range of the engine under all flight and atmospheric conditions.").

- 14 C.F.R. § 23.951(a) ("Each fuel system must be constructed and arranged to ensure fuel flow at a rate and pressure established for proper engine and auxiliary power unit functioning under each likely operating condition, including any maneuver for which certification is requested and during which the engine or auxiliary power unit is permitted to be in operation.").

- 14 C.F.R. § 23.955(a) ("The ability of the fuel system to provide fuel at the rates specified in this section and at a pressure sufficient for proper engine operation must be shown in the attitude that is most critical with respect to fuel feed and

---

[28] Id. at 812.

[29] Id. at 810-11.

[30] Id. at 812.

[31] Id.

quantity of unusable fuel. These conditions may be simulated in a suitable mockup.").

- 14 C.F.R. § 23.1093(a)(1)-(2) ("Each reciprocating engine air induction system must have means to prevent and eliminate icing. Unless this is done by other means, it must be shown that, in air free of visible moisture at a temperature of 30° F—(1) Each airplane with sea level engines using conventional venturi carburetors has a preheater that can provide a heat rise of 90° F. with the engines at 75 percent of maximum continuous power; [and] (2) Each airplane with altitude engines using conventional venturi carburetors has a preheater that can provide a heat rise of 120° F. with the engines at 75 percent of maximum continuous power.").

- 14 C.F.R. § 23.1095(a) ("If a carburetor deicing fluid system is used, it must be able to simultaneously supply each engine with a rate of fluid flow, expressed in pounds per hour, of not less than 2.5 times the square root of the maximum continuous power of the engine.").

- 14 C.F.R. § 33.67(a) ("With fuel supplied to the engine at the flow and pressure specified by the applicant, the engine must function properly under each operating condition required by this part.").

- 14 C.F.R. § 23.1099 ("Each carburetor deicing fluid system must meet the applicable requirements for the design of a fuel system.").

- 14 C.F.R. § 25.1337(c) ("If a fuel flowmeter system is installed, each metering component must have a means for bypassing the fuel supply if malfunction of that component severely restricts fuel flow.").

- 14 C.F.R. § 25.1337(f)(1)-(2) ("There must be means to measure fuel pressure, in each system supplying reciprocating engines, at a point downstream of any fuel pump except fuel injection pumps. In addition—(1) If necessary for the maintenance of proper fuel delivery pressure, there must be a connection to transmit the carburetor air intake static pressure to the proper pump relief valve connection; and (2) If a connection is required under paragraph (f)(1) of this section, the gauge balance lines must be independently connected to the carburetor inlet pressure to avoid erroneous readings.").

- 14 C.F.R. § 25.951(a) ("Each fuel system must be constructed and arranged to ensure a flow of fuel at a rate and pressure established for proper engine and auxiliary power unit functioning under each likely operating condition, including any maneuver for which certification is requested and during which the engine or auxiliary power unit is permitted to be in operation.").

- 14 C.F.R. § 25.951(b) ("Each fuel system must be arranged so that any air which is introduced into the system will not result in—(1) Power interruption for more than 20 seconds for reciprocating engines; or (2) Flameout for turbine engines.").

- 14 C.F.R. § 25.951(c) ("Each fuel system for a turbine engine must be capable of sustained operation throughout its flow and pressure range with fuel initially saturated with water at 80° F and having 0.75cc of free water per gallon added and cooled to the most critical condition for icing likely to be encountered in operation.").

These federal regulations reveal a pervasive regulation of a fuel system's delivery of the appropriate mixture of air and fuel necessary for the proper operation of the engine under any conditions. These regulations also set performance standards that necessarily require an engine's component parts to function properly. The lack of a specific regulation expressly directed to carburetor floats is of no consequence because the specific area at issue for purposes of implied field preemption is the engine's fuel system.[32]

Because federal regulations pervasively regulate an airplane engine's fuel system, including its carburetor and component parts, implied field preemption precludes applying a state law standard of care to Becker's claims.

In several jurisdictions, even in those areas that are pervasively regulated, "the scope of field preemption extends only to the [state] standard of care."[33] State law still

---

[32] See Sikkelee v. Precision Airmotive Corp., 45 F. Supp. 3d 431, 446 (M.D. Pa. 2014) (concluding that implied field preemption "of the field of aviation safety does not necessarily imply that there must be a regulation 'at hand' for [the defendant] to have violated" (boldface omitted)).

[33] Gilstrap, 709 F.3d at 1007. In some jurisdictions, the scope of implied field preemption is even broader. See, e.g., U.S. Airways, Inc. v. O'Donnell, 627 F.3d 1318, 1326 (10th Cir. 2010) (holding that "federal regulation occupies the field of aviation safety to the exclusion of state regulations"); Greene v. B.F. Goodrich Avionics Sys., Inc., 409 F.3d 784, 795 (6th Cir. 2005) (holding that because federal aviation law preempts the field from state regulations, the plaintiff's state law failure-to-warn claim was preempted by federal aviation law); Witty v. Delta Air Lines, Inc., 366 F.3d 380, 385 (5th Cir. 2004) (holding that because "Congress enacted a pervasive regulatory scheme covering air safety concerns," "federal regulatory requirements for passenger safety warnings and instructions are exclusive and preempt all state standards and requirements."); see also Alexander T. Simpson, Standard of Care vs. Claim

governs "the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies."[34] A state remedy "may survive even if the standard of care is so preempted," provided there is an applicable "parallel" federal standard of care.[35] Even if we follow the Ninth Circuit's approach that only state standards of care are subject to implied field preemption, it is elusive to determine whether there is an applicable parallel federal standard of care, especially as to a noncertificated contractor who assembles and welds parts.[36] "The FAA itself does not

---

*Preemption Under the Federal Aviation Act*, 27 No. 4 AIR & SPACE LAW. 4, 4 (2014) ("[F]ederal appeals courts have adopted different approaches regarding the reach of implied preemption under the Act as it relates to aviation safety."); Jared L. Watkins & Evan Katin-Borland, *Recent Developments in Aviation Law*, 79 J. AIR L. & COM. 213, 214-15 (2014) ("There remains a split between federal circuit courts regarding federal preemption of products liability claims.").

[34] Gilstrap, 709 F.3d at 1006.

[35] Id.

[36] Additionally, in Ventress, the Ninth Circuit held that implied field preemption precludes a flight engineer's state law claims of retaliation and constructive discharge because those claims would require factual determinations regarding pilot qualifications and medical standards for "airmen," a field pervasively regulated under federal aviation law. Ventress, 747 F.3d at 719, 721-23. In a footnote, the court observed that "even if state remedies hypothetically remain available," the flight engineer had failed to allege "a cognizable legal claim under any applicable federal standard." Id. at 723 n.7. In Gilstrap, with very limited discussion, the Ninth Circuit concluded that, although state standards of care were preempted, a disabled passenger's state law claims that an airline failed to provide her adequate assistance to move through the airport could proceed to trial based upon a federal standard of care under the federal Air Carrier Access Act. Gilstrap, 709 F.3d at 1007-08, 1010-11. In Sikkelee, a carburetor defect case, the court rejected deriving a federal standard of care from general federal aviation regulations, even if specific federal regulations leave gaps as to particular defects. "'[C]onstruing and applying FAA safety regulations as federal standards of care in [aircraft product liability cases] will be arduous and impractical.'" Sikkelee, 45 F. Supp. 3d at 447 (alterations in original) (quoting Pease v. Lycoming Engines, 2011 WL 6339833, at *23 (M.D. Pa. 2011)). In a footnote, the court observed that "[d]eciding how federal regulations should translate into a standard of care has proven a bedeviling task in other contexts as well." Id. n.15 (citing In re TMI, 67 F.3d 1103, 1107 (3d Cir. 1995) ("Although it is clear that federal law governs the standard of care for tort claims arising

clearly establish a federal standard of care; the Code of Federal Regulations does, but only as applied to 'aircraft operations.'"[37] Becker provides no authority or argument that the assembly of a carburetor float is a part of airplane operations.

Becker points to the FAA's general airworthiness provisions, but cites no authority that the general concept of airworthiness or any specific federal standard of care applies to Becker's state law manufacturing defect claims against FTI.[38] Becker cites no authority that the general reference to "the Federal Aviation Regulations (14 CFR et seq)" in Becker's second amended complaint provides a parallel federal standard of care for Becker's state law manufacturing defect claims.[39] In addition, because the FAA does not create a federal cause of action for personal injury suits, it must "only contemplate tort suits brought under state law."[40] Absent briefing supporting a specific parallel federal standard of care, we read Becker's complaint as limited to state law claims based upon state standards of care.

Therefore, on this briefing, we agree with the trial court that all of Becker's claims against FTI fail. No one disputes that Becker was able to pursue manufacturing defect claims against both Avco, the type certificate holder for the engine, and Precision, the

---

from nuclear accidents, it is more difficult to discern the precise contours of that federal duty.")).

[37] Keum v. Virgin America Inc., 781 F. Supp. 2d 944, 948-49 (N.D. Cal. 2011) (quoting 14 C.F.R. § 91.13, the federal "careless or reckless" standard for aircraft operations).

[38] See RAP 10.3(a)(6); Regan v. McLachlan, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011) ("We will not address issues raised without proper citation to legal authority.").

[39] CP at 77, ¶ 7.4.

[40] Martin, 555 F.3d at 808.

PMA holder for the carburetor. But a hypothetical state remedy based on an unsupported federal standard of care does not warrant a trial as to FTI.

*Waiver of Federal Preemption Defense*

Becker contends FTI waived preemption by failing to plead preemption as an affirmative defense. We disagree.

Since 1975, Washington courts have recognized that if a failure to plead an affirmative defense under CR 8(c) "does not affect the substantial rights of the parties, the noncompliance will be considered harmless."[41] This policy is to avoid surprise.[42] Any objection to a failure to plead an affirmative defenses is "waived where there is written and oral argument to the court without objection on the legal issues raised in connection with the defense."[43] And raising an affirmative defense for the first time in a motion for summary judgment has been recognized as harmless error.[44]

Becker does not establish any surprise or prejudice affecting any substantial right. Neither in Becker's response to FTI's motion for summary judgment nor in oral argument of that motion did Becker object that federal preemption had not been pleaded or argue that Becker was surprised by the preemption argument. Becker offered the trial court extensive briefing on field preemption.[45] Becker did not raise the

---

[41] Mahoney v. Tingley, 85 Wn.2d 95, 100, 529 P.2d 1068 (1975); see also Hogan v. Sacred Heart Med. Ctr., 101 Wn. App. 43, 54-55, 2 P.3d 968 (2000); Henderson v. Tyrrell, 80 Wn. App. 592, 624, 910 P.2d 522 (1996).

[42] Bickford v. City of Seattle, 104 Wn. App. 809, 813, 17 P.3d 1240 (2001).

[43] Mahoney, 85 Wn.2d at 100.

[44] See id. at 100-01.

[45] See CP at 278.

failure to plead preemption until Becker's motion to reconsider the order granting summary judgment. Therefore, we conclude FTI did not waive its preemption defense.

*Leave to Amend to Allege Violations of Federal Law*

Becker contends the trial court erred in denying Becker's motion to file a third amended complaint identifying specific federal regulations as to FTI. We disagree.

The decision to grant leave to amend the pleadings is within the trial court's discretion.[46] Absent an abuse of discretion, the trial court's decision will not be disturbed on appeal.[47] In determining whether prejudice would result, we may consider potential delay, unfair surprise, and the probable merit or futility of the amendments requested.[48]

In August 2012, the trial court denied Becker's motion to file a third amended complaint after FTI had already been dismissed from the case on summary judgment. "When a motion to amend is made after the adverse granting of summary judgment, the normal course of proceedings is disrupted and the trial court should consider whether the motion could have been timely made earlier in the litigation."[49] Becker's motion to amend was untimely.[50] The litigation had been pending for nearly two years before the trial court dismissed FTI, and FTI had served discovery on Becker asking Becker to identify specific regulations that FTI violated. Under these circumstances, Becker's

---

[46] Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999).

[47] Id.

[48] Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 142, 937 P.2d 154 (1997); Karlberg v. Otten, 167 Wn. App. 522, 529, 280 P.3d 1123 (2012).

[49] Doyle v. Planned Parenthood of Seattle-King County, Inc., 31 Wn. App. 126, 130-31, 639 P.2d 240 (1982).

[50] See Haselwood v. Bremerton Ice Arena, 137 Wn. App. 872, 890, 155 P.3d 952 (2007).

delay in alleging specific violations of federal regulations was a reasonable basis to deny Becker's motion.[51]

The trial court also denied Becker's motion to amend its second amended complaint to add a punitive damages claim against FTI. Because implied field preemption applies, we need not reach Becker's argument that the trial court should have allowed Becker to allege punitive damages in an amended complaint. We also decline to reach FTI's alternative arguments that it is not a product seller or manufacturer under Washington's Product Liability Act. And we decline to reach FTI's argument that this appeal is untimely.

Lastly, for the first time in its reply brief, Becker contends FTI lacks standing to assert the preemption defense because FTI claims it is not subject to federal regulations. The cases relied upon by Becker, Miller v. Rite Aid Corp.[52] and W.G. Clark Construction Co. v. Pacific Northwest Regional Council of Carpenters,[53] relate to an express preemption clause contained in the Employee Retirement Income Security Act of 1974 (ERISA),[54] an entirely different setting than implied field preemption under the FAA and regulations adopted by the Federal Aviation Administration. Those opinions do not stand for the proposition that a noncertificated contractor under the FAA may not

---

[51] See id. (trial court did not abuse its discretion in denying defendant leave to amend its pleadings after summary judgment was granted).

[52] 504 F.3d 1102, 1105 (9th Cir. 2007) ("ERISA does not preempt the claims of parties who do not have the right to sue under ERISA because they are neither participants in nor beneficiaries of an ERISA plan.").

[53] 180 Wn.2d 54, 65, 322 P.3d 1207 (2014) ("[S]tate lien claims that apply to third parties are outside the scope of ERISA and thus not preempted.").

[54] 29 U.S.C. §§ 1001-1461.

assert a preemption defense to state law manufacturing defect claims. Therefore, we reject Becker's contention that FTI lacks standing to assert a preemption defense.

CONCLUSION

We conclude the FAA and related regulations preempt the standard of care for Becker's state law manufacturing defect claims against FTI. Because Becker cites no authority that an applicable parallel federal standard of care applies to those state law claims, nothing remains for the trial court to decide.

We affirm the dismissal of Becker's claims against FTI.

WE CONCUR:

2015 DEC 28 AM 9: 36
COURT OF APPEALS DIV I
STATE OF WASHINGTON