KOZINSKI, Chief Judge:
We consider whether, and to what extent, the Federal Aviation Act, 49 U.S.C. §§ 40101 et seq., preempts an airline passenger’s personal injury claims.
Facts
A pregnant woman fell from an airplane’s stairs, injuring herself and her fetus. She sued the airline, Midwest Express, and the airplane’s manufacturer, Fairchild Dornier and related companies, alleging that the stairs were defectively designed because they had only one handrail. Midwest Express settled the claim for $8 million, and now seeks indemnity from the manufacturer. Relying on Montalvo v. Spirit Airlines, 508 F.3d 464 (9th Cir.2007), the manufacturer argues that the Federal Aviation Act preempts the passenger’s personal injury claims and, consequently, Midwest Express’ indemnity claim.
Analysis
The Federal Aviation Act has no express preemption clause. The personal injury claim here conflicts with no provision of the act or regulation promulgated under it. The manufacturer’s argument thus rests on implied field preemption.
The touchstone of preemption is congressional intent. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). To find field preemption here, we must infer that Congress intended to exclude all state law personal injury suits from the area of air travel, even though it didn’t say so. The FAA betrays no such intention. It expressly preserves state remedies, declaring “[a] remedy under this part is in addition to any other remedies provided by law.” 49 U.S.C. § 40120(c). Moreover, it requires airlines to maintain liability insurance “sufficient to pay ... for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft.” 49 U.S.C. § 41112. As the FAA doesn’t create a federal cause of action for personal injury suits, see Bennett v. Southwest Airlines Co., 484 F.3d 907 (7th Cir.2007), this clause can only contemplate tort suits brought under state law.
Two amendments to the FAA added limited preemption provisions, neither of which applies here. The Airline Deregulation Act preempts laws and regulations “related to a price, route, or service” of airlines. 49 U.S.C. § 41713. The General Aviation Revitalization Act provides an eighteen-year statute of repose for product liability claims against airplane manufacturers. 49 U.S.C. § 40101. As we ex *809 plained in Charas v. Trans World Airlines, Inc., the airline regulatory acts “evidence[] congressional intent to prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law.” 160 F.3d 1259, 1265 (9th Cir.1998); see American Airlines, Inc. v. Wolens, 513 U.S. 219, 234 & n. 9, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (suggesting that the airline regulatory statutes “leave[] room for personal injury claims”).
While the FAA did not displace all state tort law touching air travel, neither did it leave states free to impose tort liability on all aspects of airplane operations. Citing “the pervasive nature of the scheme of federal regulation of aircraft noise,” City of Burbank v. Lockheed Air Terminal, 411 U.S. 624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), held that the FAA and the Noise Control Act preempted a noise ordinance prohibiting planes from taking off between 11 p.m. and 7 a.m. Aircraft noise, the Court reasoned, is inextricably linked to the movement of aircraft, which is under exclusive federal control. As Justice Jackson had earlier remarked, “[pjlanes do not wander about in the sky like vagrant clouds. They move only by federal permission ... under an intricate system of federal commands.” Northwest Airlines, Inc. v. Minnesota, 322 U.S. 292, 303, 64 S.Ct. 950, 88 L.Ed. 1283 (1944) (Jackson, J., concurring).
Following Burbank, the circuits have generally analyzed FAA preemption by looking to the pervasiveness of federal regulations in the specific area covered by the tort claim or state law at issue. Claims regarding airspace management, pilot qualifications and failure to warn have been declared preempted. French v. Pan Am. Express, Inc., 869 F.2d 1 (1st Cir.1989); Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir.1974); Witty v. Delta Air Lines, Inc., 366 F.3d 380 (5th Cir.2004). But several defective product claims, such as the claim here, have not. Cleveland v. Piper Aircraft Corp., 985 F.2d 1438 (10th Cir.1993); Public Health Trust of Dade County, FI. v. Lake Aircraft, Inc., 992 F.2d 291 (11th Cir.1993). See also Air Transp. Ass’n of Am. v. Cuomo, 520 F.3d 218 (2d Cir.2008) (“we have acknowledged that the FAA does not preempt all state law tort actions”).
The Third Circuit, considering a failure to warn claim, took a different approach. Rather than limiting its analysis to regulations on warnings, the court decided that “federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation.” Abdullah v. American Airlines, Inc., 181 F.3d 363, 367 (3d Cir.1999). The savings and insurance clauses, the court reasoned, only preserve state remedies, while excluding all state standards of care. Id. at 367-68. In Montalvo v. Spirit Airlines, citing Abdullah, we stated that the FAA “demonstrate[s] an intent to occupy exclusively the entire field of aviation safety and ... preempt all state law in this field.” 508 F.3d 464, 471 (9th Cir.2007).
Considered as a whole, however, Mon-talvo cuts against the manufacturer’s argument for broad FAA preemption. Montal-vo dealt with three state tort claims against an airline, all based on passengers getting dangerous blood clots from long flights in cramped seating. 508 F.3d at 469. First, passengers claimed that the airline was negligent because the crew didn’t warn them about blood clots, or tell them how to lessen their risk. Id. The FAA, we held, preempts this claim, and “all state law on the subject of air safety.” Id. at 472.
Our analysis rested heavily on the Federal Aviation Administration’s “pervasive *810 regulations” of warnings to passengers. Id. The familiar litany of warnings — seatbelts should be worn low and tight around the hips; the seat cushion can be used as a flotation device — is federally required. Id. at 473; 14 C.F.R. § 121.571. The agency intended its list of warnings to be comprehensive. 508 F.3d at 473. If every state could supplement this list through tort law or legislation, there would be so many warnings that the ones the agency prescribed would be drowned out by the others. As the Fifth Circuit explained in Witty, “warnings by their nature conflict, in the sense that the import of one warning is diluted by additional warnings that might be imposed under state law.” 366 F.3d at 385. Therefore, the FAA preempts any state tort claim based on a theory that the warnings required by the agency are insufficient.
Relying on this section of Montalvo, the manufacturer argues that the FAA preempts all personal injury claims by airline passengers, except claims based on violations of specific federal regulations. However, this argument conflicts with the second part of Montalvo, which considered a claim that the seating configuration was too cramped, putting passengers at risk of blood clots. Id. at 474. The passengers didn’t allege that the seating violated a federal regulation, id.; see 14 C.F.R. § 23.785, and yet we didn’t hold that the FAA preempted the claim, which would follow from a broad reading of the first section. Indeed, we didn’t consider FAA preemption at all. Instead, we reversed the district court’s holding that the Airline Deregulation Act preempted the claim and remanded for consideration whether providing roomier seating would significantly affect ticket prices or competition between airlines — a required element for ADA preemption. 508 F.3d at 475.
In a third claim, the Montalvo plaintiffs alleged that the airplane seats were defectively designed. The district court held that the FAA impliedly preempted the claim because seat designs were pervasively regulated, noting that “the FAA Administrator has enacted a wealth of federal regulations governing the design, maintenance, structure and position of aircraft seats.” In re Deep Vein Thrombosis Litig., 2005 WL 591241 at *14 (N.D.Cal.2005). The plaintiffs did not appeal that holding. Our analysis of Montalvo does not depend, as the concurrence argues, on any analogy between the seating design and configuration claims. Concurrence at 813. Rather, it springs from Montalvo’s different treatment of the seating configuration and failure to warn claims. If Mon-talvo had held that the FAA preempts all state law personal injury claims, it would have been unnecessary to reverse the district court’s dismissal of the seating configuration claim and remand for further consideration of ADA preemption.
Furthermore, the manufacturer’s broad reading of Montalvo, precluding any claim not based on a violation of a specific federal regulation, is in tension with our en banc decision in Charas. Charas considered several state law personal injury claims based on aircrews’ negligent actions, such as leaving luggage in the aisles and hitting passengers with the beverage cart. Id. at 1261. Charas even considered a claim similar to the one here, that the aircrew negligently allowed a passenger to fall from a stairway with only one handrail. Id. at 1261-62. That passenger also brought the exact claim at issue here, that the stair design was defective, but the district court held that the claim was not preempted and the airline did not appeal. Id. Reading the ADA’s preemption provision narrowly, we overruled several district courts, and two of our own decisions, and held that Congress “did not intend to *811 preempt passengers’ run-of-the-mill personal injury claims,” drawing no distinction between state remedies and state standards of care. Id. at 1261, 1265. Although Charas did not consider FAA preemption, it reversed several district court and panel decisions for interpreting ADA preemption too broadly. This holding would be moot if all the claims at issue were preempted anyway by the FAA.
The concurrence argues there is a federal standard of care in all airplane personal injury cases, but that it is not exclusively set by federal regulations. Instead, in areas without pervasive and relevant regulations, the federal standard should be set by expert testimony on standard industry practices. Concurrence at 814-16. But neither Montalvo nor Abdullah, nor any language in the FAA, contemplates such a rule; Montalvo does not mention expert testimony at all, and Abdullah suggests that it could be used only for interpreting the relevant federal regulations, not for setting a federal standard independent from the regulations. Abdullah, 181 F.3d at 371-72. The FAA itself makes no mention of federal courts developing a federal common law standard of care for airplane personal injury actions, and “[tjhere is no federal general common law.” Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); see generally Suzan-na Sherry, Overruling Erie: Nationwide Class Actions and National Common Law, 156 U. Penn. L.Rev. 2135, 2138 (2008) (advocating the demise of the Erie doctrine for tort actions that impact national markets).
Montalvo, then, neither precludes all claims except those based on violations of specific federal regulations, nor requires federal courts to independently develop a standard of care when there are no relevant federal regulations. Instead, it means that when the agency issues “pervasive regulations” in an area, like passenger warnings, the FAA preempts all state law claims in that area. In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable.
This conclusion accords with the decisions of other circuits, refusing to find various defective product claims impliedly preempted by the FAA in the absence of relevant and pervasive regulations on the allegedly defective part. The Tenth Circuit, in Cleveland v. Piper Aircraft Corp., held that a claim that a plane was defectively designed because the pilot had inadequate visibility was not preempted, although the design violated no federal regulations and was approved by the agency. 985 F.2d at 1445. And in Public Health Trust of Dade County, Fl. v. Lake Aircraft, Inc., the Eleventh Circuit held that the FAA didn’t preempt a defective seat design claim. 992 F.2d at 292, 295. See also Greene v. B.F. Goodrich Avionics Sys., Inc., 409 F.3d 784, 788-89, 794-95 (6th Cir.2005) (citing Abdullah to find FAA preemption of a failure to warn claim, but applying a state law analysis to a claim that a navigational instrument was defectively manufactured).
The manufacturer further argues that defective product claims are preempted by the federal certification process required for every plane design. To certify a plane design, the manufacturer must show that it meets the agency’s regulations, and “that no feature or characteristic makes it unsafe.” 14 C.F.R. § 21.21. The regulations contain numerous specific requirements for the designs, largely focused on preventing crashes and limiting the seriousness of those that occur. See, e.g., 14 C.F.R. §§ 25.341, 25.561. They also include a prohibition on “design features or details that experience has shown *812 to be hazardous or unreliable.” 14 C.F.R. § 25.601. The agency generally uses sections 25.601 and 21.21 when implementing “special conditions,” alternative requirements for plane designs with “novel or unusual” components “not envisioned” by the other regulations. 73 F.R. 389-01; 72 F.R. 57842-01; see 14 C.F.R. § 21.16; but see 70 F.R. 76728-01 (declaring that a seat belt design does not comply with section 25.601). When a design does not include novel components, the certification process simply implements the specific regulations. See GATX/Airlog Co. v. United States, 286 F.3d 1168, 1171 (9th Cir.2002). There’s no indication that the agency has interpreted sections 25.601 and 21.21 as directing it to pervasively regulate every aspect of plane design.
Airstairs are not pervasively regulated; the only regulation on airstairs is that they can’t be designed in a way that might block the emergency exits. 14 C.F.R. § 25.810. The regulations have nothing to say about handrails, or even stairs at all, except in emergency landings. No federal regulation prohibits airstairs that are prone to ice over, or that tend to collapse under passengers’ weight. The regulations say nothing about maintaining the stairs free of slippery substances, or fixing loose steps before passengers catch then-heels and trip. It’s hard to imagine that any and all state tort claims involving airplane stairs are preempted by federal law. Because the agency has not comprehensively regulated airstairs, the FAA has not preempted state law claims that the stairs are defective.
For the reasons set forth in the accompanying memorandum, the airline did not waive its right to indemnity through the sales contract.
REVERSED.