**Opinion issued February 14, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-10-01080-CV

———————————

## DHL EXPRESS (USA), INC., Appellant

## V.

## FALCON EXPRESS INTERNATIONAL, INC., Appellee

On Appeal from the 157th District Court
Harris County, Texas
Trial Court Case No. 2008-66394

## DISSENTING OPINION

The majority errs in holding that the trial court erred in entering its judgment in favor of appellee, Falcon Express International, Inc. ("Falcon"), after a jury found that appellant, DHL Express (USA), Inc. ("DHL"), committed fraud against

Falcon by failing to disclose a material fact to Falcon prior to it entering into an "Assignment and Assumption Agreement" with DHL. The majority's error follows from its erroneous conclusion that Falcon's lawsuit, in which it seeks rescission of the agreement and asks for punitive damages, is preempted by the Airline Deregulation Act of 1978 (the "ADA")[1] and the Federal Aviation Administration Authorization Act (the "FAAAA").[2] Accordingly, I respectfully dissent.

Falcon alleged and presented evidence to the jury that DHL defrauded it of $1,571,426.31 to enter a contract to become a reseller of DHL's small package delivery services in the United States with written assurances that DHL had ruled out any possibility of withdrawing from the United States market and was "here to stay." Specifically, Falcon asserted that DHL failed to disclose material facts with the intent to induce Falcon to pay DHL to assume a reseller agreement that Freight Savers Express ("FSE") had with DHL. After DHL, only four months later, announced that it would discontinue all domestic shipping operations, effectively destroying Falcon's business, Falcon sued DHL to rescind the agreement, get its money back, and punish DHL for its wrongdoing. The jury unanimously found

---

[1]    49 U.S.C. § 41713(b)(1) (2004).

[2]    49 U.S.C. § 14501(c)(1) (2004).

that DHL defrauded Falcon and awarded it $1,704,228.79 in actual damages and $3,214,724.62 in exemplary damages.

In its first issue, DHL argues that the trial court erred in entering its judgment against DHL, rescinding the agreement, and awarding Falcon actual and exemplary damages because "federal law completely preempts Falcon's fraud and punitive damages claims."

The Supremacy Clause of the United States Constitution provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2; *see also MCI Sales and Serv., Inc., v. Hinton*, 329 S.W.3d 475, 481 (Tex. 2010), *cert. denied*, 131 S. Ct. 2903 (2011).

Preemption of state law may be either express or implied. *MCI Sales*, 239 S.W.3d at 482; *Delta Air Lines, Inc. v. Black*, 116 S.W.2d 745, 748 (Tex. 2003). Ascertaining "[t]he purpose of Congress is the ultimate touchstone" in every preemption case. *Retail Clerks Int'l Ass'n. v. Schermerhorn,* 375 U.S. 96, 103, 84 S. Ct. 219, 223 (1963); *Delta Air Lines*, 116 S.W.3d at 748. And congressional intent is discerned primarily from a statute's language and structure. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486, 116 S. Ct. 2240, 2250–51 (1996). Also relevant is the purpose of the statute as a whole, which is revealed through "the reviewing

3

court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.*

The ADA is designed to promote "maximum reliance on competitive market forces" while at the same time "assigning and maintaining safety as the highest priority in air commerce." 49 U.S.C. § 40101(a) (2004); *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 230, 115 S. Ct. 817, 824 (1995); *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 369 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The ADA's preemption provision provides:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 states may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to price, route, or service* of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (2004) (emphasis added). The FAAAA uses the same preemption language, but it applies to motor carriers instead of air carriers. *See* 49 U.S.C. § 14501(c)(1) (2004).

The United States Supreme Court, relying on its ERISA line of cases and the ordinary meaning of the statute's words, has broadly construed the phrase "related to" in the ADA to preempt "State enforcement actions having a connection with, or reference to, airline 'rates, routes, or services.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S. Ct. 2031, 2037 (1992); *Delta Air Lines*, 116 S.W.3d

4

at 749–50.  However, the Court has emphasized that some state actions that may affect airline rates, routes, or services do so "'in too tenuous, remote, or peripheral a manner' to have preemptive effect."  *Morales*, 504 U.S. at 390, 112 S. Ct. at 2040 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21, 103 S. Ct. 2890, 2901 (1983)).  The Texas Supreme Court has utilized a two-step inquiry to determine whether claims are preempted by the ADA, asking whether: (1) a claim "relate[s] to" airline rates, routes, or services and (2) the claim constitutes the enactment or enforcement of a state law, rule, regulation, standard, or other provision. *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.3d 274, 281 (Tex. 1996).

Here, Falcon alleged and presented evidence that DHL committed fraud by nondisclosure in making false and misleading representations about whether DHL "still considered a withdrawal from the United States domestic market an option," which DHL had a duty to disclose because it "created a false impression by making partial disclosures"; "knew that Falcon was ignorant of the undisclosed fact"; and "voluntarily disclosed some information to Falcon."  Falcon asserts that DHL made "false and misleading disclosures intending to influence those doing business with DHL" and "fraudulently induced Falcon to enter into a contractual relationship as a reseller and pay off" FSE's "debt to DHL."[3]

---

[3]  Falcon made essentially the same allegations under its claims for both "fraud in the inducement" and fraud by nondisclosure.  However, the jury answered, "No," in response to whether DHL had fraudulently induced Falcon to enter the contract.

Even assuming that Falcon's common-law fraud claim has "a connection with, or reference to," DHL's rates, routes, and services, such a connection is too "tenuous, remote, or peripheral" to conclude that it is preempted by the ADA and the FAAAA. The gist of Falcon's fraud claim is that DHL failed to disclose a material fact prior to Falcon entering into the Assignment and Assumption Agreement. And, as the trial court properly instructed the jury, Falcon's fraud claim primarily concerns DHL's "duty to disclose" material facts to Falcon and DHL's failure to disclose those material facts with the intent "to induce" Falcon "to take some action by failing to disclose the fact[s]."

In short, Falcon complains that DHL had a duty to disclose the fact that it was not going to continue small package delivery services in the United States and failed to disclose this fact with the intent to get Falcon to assume FSE's reseller relationship by paying FSE's debt to DHL. Simply put, Falcon complains that DHL engaged in wrongdoing in this business transaction. This is clearly not the type of conduct or activity that Congress meant to regulate in crafting the ADA or the FAAAA. The fact that the subject matter of the underlying contract concerned DHL's delivery services is only remotely connected to Falcon's claim. *See Egelhoff v. Egelhoff*, 532 U.S. 141, 146, 121 S. Ct. 1322, 1327 (2001) (noting, in ERISA context, that "the term 'relate to' cannot be taken 'to extend to the furthest

It answered, "Yes," in response to whether DHL had committed fraud by nondisclosure.

6

stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course'") (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S. Ct. 1671, 1677 (1995)). If Falcon's fraud claim is "related to" DHL's rates, routes, and services and is preempted, as asserted by the majority, then virtually any claim regarding a business contract with an air or motor carrier will be preempted. Congress simply did not intend to so immunize air and motor carriers. And the fallacy of the majority's reasoning is made apparent in the result dictated by its holding: it destroys Falcon's remedy of contract rescission and remands the case to the trial court for proceedings to enforce a contract that a jury has found is based upon fraud.

The trial court's judgment on Falcon's fraud claim simply does not amount to a prohibited enforcement of a state law, rule, regulation, standard, or other provision. Falcon's fraud claim arises from general, commonly accepted tort and contract principles. *See Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 289–90 (5th Cir. 2002) (noting that fraudulent inducement is a "core concept" of contract law and observing that because "contract law is, at its 'core,' uniform and non-diverse, there is little risk of inconsistent state adjudications of contractual obligations"); *see also Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 809 (9th Cir. 2009) (stating that airline regulatory acts intend "to

7

prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law") (quoting *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th Cir. 1998)).

Like the negligence action at issue in *Kiefer*, Falcon's fraud claim, which is centered on DHL's "duty to disclose" material facts and its failure to disclose those material facts with the intent "to induce" Falcon "to take some action by failing to disclose the fact[s]," is not intrusive on the regulation of airline business practices. *See* 920 S.W.2d at 282. Falcon does not seek to require DHL to perform any services or impose any limits on its rates or routes. It merely seeks to rescind a contract entered into based on fraud by nondisclosure. And nothing in the record establishes that Falcon's lawsuit to rescind the Assumption and Assignment Agreement will impact DHL's rates, routes, or services. Simply put, Falcon's claim for fraud by nondisclosure in no way impedes Congress's goal in enacting the ADA to promote "maximum reliance on competitive market forces" while at the same time "assigning and maintaining safety as the highest priority in air commerce." *See* 49 U.S.C. § 40101(a).

Likewise, the trial court's award of punitive damages to Falcon does not impact DHL's rates, routes, or services or impede the purpose of the ADA or the FAAAA. It is true that the Texas Supreme Court has, in dicta, cautioned that tort claims, including a claim for punitive damages, might "undo federal deregulation

8

with regulation of their own." *Kiefer*, 920 S.W.2d at 282–83 (quoting *Morales*, 504 U.S. at 387, 112 S. Ct. at 2034). However, because Falcon's claim for fraud has only, at best, a tenuous connection to DHL's rates, routes, or services, the trial court's award of punitive damages, a customary remedy for a fraud claim, is not preempted by the ADA or the FAAAA. *See Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 195 (3rd Cir. 1998) (holding that punitive damages award on defamation claim was not preempted because "defamation is so foreign to regulations on prices, routes, and services that it is unlikely that an award of traditional damages would offend Congressional intent"); *see also Pac. Mut. Life Ins. Co. v. Haislip*, 499 U.S. 1, 15, 111 S. Ct. 1032, 1041 (1991) ("Punitive damages have long been a part of traditional state tort law.") (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 255, 104 S. Ct. 615, 625 (1984)).

Accordingly, I would hold that Falcon's lawsuit, in which it seeks rescission of the Assumption and Assignment Agreement and actual and punitive damages, is not preempted by the ADA or the FAAAA. The majority's conclusion to the contrary constitutes an error of such importance to the state's jurisprudence that it should be corrected. *See* TEX. GOV'T CODE ANN. § 22.001(a)(6) (Vernon 2004). Thus, I would further hold that the trial court did not err in entering judgment against DHL, rescinding the Assumption and Assignment Agreement, and awarding Falcon actual and exemplary damages on the ground that "federal law

9

completely preempts" Falcon's lawsuit, and I would address the remaining issues in this appeal.

Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

Justice Jennings, dissenting.