

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 26 2017

_____
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Jan 26, 2017

_____
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ESTATE OF VIRGIL VICTOR BECKER, JR., by its Personal Representative, Jennifer L. White, <br><br> Petitioner, <br><br> v. <br><br> AVCO CORPORATION; PRECISION AIRMOTIVE LLC; VOLARE CARBURETORS LLC; MARVEL-SCHEBLER CARBURETORS LLC; TEMPEST PLUS MARKETING GROUP LLC; AERO ACCESSORIES, INC.; SYNERGY SYSTEMS, INC.; CASHMERE MOLDING, INC.; CREST AIRPARK, INC.; PREMIER AIRCRAFT ENGINES, INC; AUBURN FLIGHT SERVICE, INC; and ESTATE OF BRENDA L. HOUSTON, by its Personal Representative PAUL THOMAS CREWS, <br><br> Defendants, <br><br> and <br><br> FORWARD TECHNOLOGY INDUSTRIES, INC., <br><br> Respondent. | No. 92972-6 <br><br> En Banc <br><br> Filed ___JAN 26 2017___ |

OWENS, J. — Virgil Victor Becker, a retired doctor, was killed in a plane crash. His estate (Estate) claimed that a faulty carburetor caused the crash. Forward Technology Industries Inc. (FTI) built a component for that carburetor. The Estate brought numerous claims against FTI, including a state product liability claim implicating a faulty carburetor component. FTI moved for summary judgment, arguing that the Federal Aviation Administration Authorization Act of 1994 (Federal Aviation Act), Pub. L. No. 103-305, 108 Stat. 1569, preempted state law.

In certain circumstances, federal law and state law will interact in such a way that the federal law will take priority and preempt state law. The Federal Aviation Act does not include an express preemption clause. However, federal law can preempt state law if it pervasively occupies a particular field of law. The Third Circuit recently found that federal aviation regulations do not preempt the state product liability of an aviation systems manufacturer because they are not so pervasive as to indicate congressional intent to preempt state law. We follow the Third Circuit and find that the Federal Aviation Act does not preempt state law. Accordingly, we reverse the Court of Appeals and remand to the trial court for further proceedings.

## FACTS

In 2008, a single-propeller airplane crashed near McMurray, Washington. The pilot and two passengers were killed in the crash. One of those passengers was Becker, a retired doctor. Though the parties dispute the ultimate cause of the crash,

the Estate claims that the engine stalled due to a poorly manufactured carburetor and that this engine failure led to the crash and the death of Becker.

The plane's fuel system was designed and produced by Precision Airmotive LLC (Precision). Though Precision assembled the final product, it contracted with several other companies to produce various components for the fuel system, including the carburetor. FTI was one of those companies.

FTI normally manufactures machines designed to weld plastic parts. Sometime before 1997, it sold Precision a machine designed to heat and hermetically seal two plastic components together. Though Precision bought the machine and three tools capable of sealing three different types of carburetor components, it subsequently contracted FTI to use two of those tools to weld carburetor floats for Precision.

Precision would procure two plastic components from a plastics manufacturer and ship those components to FTI. Using Precision's tools, FTI would weld the plastic components into a completed, sealed carburetor float. After a batch of these floats was completed, FTI would test them and send them to Precision.

FTI produced floats for Precision from at least 1997 until 2005. During that time, it produced over 30,000 floats. FTI understood that it was responsible for generating carburetor floats that would eventually be placed in airplane engines. It also knew that the weld on the float needed to be perfect for the float to function

properly. Around 2001, a carburetor containing one of these floats was installed in the plane that crashed and killed Becker.

During its investigation into the crash, the National Transportation Safety Board examined the carburetor of the downed airplane. The investigation revealed that one chamber of the float was completely filled with aviation fuel. A float filled with fuel can force the engine's fuel feed to remain open, causing the engine to flood and stall out. The investigator did not explain what caused the float to leak and fill with fuel. However, the Estate asserts that the float leaked because of an imperfect weld applied by FTI.

In 2010, the Estate and another plaintiff filed suit against FTI and 11 other defendants. The Estate claimed numerous tort violations, alleging FTI and the other defendants had caused an unreasonably dangerous condition in the carburetor float and that this condition caused the airplane's engine to stall, resulting in the crash that caused Becker's death.

FTI moved for summary judgment. It argued that because of pervasive Federal Aviation Administration (FAA) regulations, federal law occupied the field of aviation safety and that all of the Estate's state law claims were preempted. In the alternative, FTI argued that the Estate could bring a product liability action only under the Washington tort reform and product liability act (WPLA), chapter 7.72 RCW.[1]

---

[1] Because neither of the lower courts addressed the WPLA issue, we decline to do so here.

4

King County Superior Court granted the motion for summary judgment on federal preemption grounds, declining to address the WPLA issue. The Estate subsequently filed a motion for reconsideration and a motion for leave to file a third amended complaint. The trial court denied both motions.

The Estate and the other plaintiff settled the remaining claims, deconsolidated their cases, and voluntarily dismissed the remaining defendants. The court then entered a final judgment.

The Estate appealed the summary judgment order, as well as the order denying leave to amend, to the Court of Appeals. *Estate of Becker v. AVCO Corp.,* 192 Wn. App. 65, 365 P.3d 1273 (2015). The court found that "federal regulations pervasively regulate an airplane engine's fuel system," and that this constitutes "implied field preemption [that] precludes applying a state law standard of care to [the Estate's] claims." *Id.* at 79. It reasoned that preemption applies when "'pervasive regulations' govern a specific area of aviation safety." *Id.* at 76. The court held that federal law preempted state law because the specific legal area at issue was the "engine's fuel system," and the "many federal regulations focused on performance and safety standards" for airplane engines pervasively regulate this area. *Id.* The court also concluded that the trial court had not abused its discretion in denying leave to amend, reasoning that the Estate's delay in filing the motion was a reasonable basis for denial. *Id.* at 83. It also declined to address the WPLA issue.

The Estate sought review by this court, which was granted. *Estate of Becker v. AVCO Corp.*, 185 Wn.2d 1040, 377 P.3d 763 (2016).

## ISSUES

1.     Are the regulations promulgated under the Federal Aviation Act so pervasive as to constitute field preemption of state product liability law?

2.     Did the trial court err when it declined to provide the Estate the opportunity to file a third amended complaint?

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of any material fact, if the moving party is entitled to judgment as a matter of law, and if reasonable minds could reach only one conclusion from the evidence presented. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846 (2007). We review grants of summary judgment de novo. *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003).

## ANALYSIS

In this case, we hold that the Federal Aviation Act does not preempt Washington law. Congress intended the act to allow for the creation of minimum standards. It is not so pervasive or comprehensive enough to preempt state remedies that exceed that minimum. Two circuit courts have recently made similar conclusions. *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680 (3d Cir.), *cert.*

*denied*, 196 L. Ed. 2d 433 (2016); *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007). In addition, the history of the act itself indicates that Congress intended to avoid federal preemption rather than aim for it. Because we rule that federal law does not preempt state law in this case, we decline to address whether the trial court abused its discretion in denying a third amendment. Because the Court of Appeals erred when it concluded that state law was preempted by federal law, we reverse the Court of Appeals and remand for further proceedings.

### 1. The Regulations Promulgated under the Federal Aviation Act Are Not So Pervasive as To Preempt State Product Liability Law

The Estate contends that the Federal Aviation Act and the regulations promulgated under it are not pervasive enough to indicate intent by Congress to preempt state product liability law. We agree. Though we have never ruled on this issue, several federal courts have. First, the Third Circuit recently ruled in a case almost identical to this one that the Federal Aviation Act was not pervasive enough to preempt state product liability law, and that there was no evidence to suggest that it was ever intended to do so. In addition, the Ninth Circuit has held that a regulation must not only be pervasive, but also must comprehensively regulate an area of law to have preemptive effect. Finally, Congress' actions after passing the Federal Aviation Act indicate that, rather than attempting to preempt state law, it was trying to *avoid* preemption. Because of this, state law is not preempted.

There are three methods Congress may use to preempt state law: express

preemption, conflict preemption, and field preemption. *Progressive Animal Welfare*

*Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 265, 884 P.2d 592 (1994) (plurality opinion).

To effectuate field preemption, Congress must "occup[y] an entire field of regulation

to the exclusion of any state laws." *Resident Action Council v. Seattle Hous. Auth.*,

177 Wn.2d 417, 444, 327 P.3d 600 (2013). However, state laws "'are not superseded

by federal law unless that is the clear and manifest purpose of Congress.'"

*Progressive Animal Welfare*, 125 Wn.2d at 265 (quoting *Wash. State Physicians Ins.*

*Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 327, 858 P.2d 1054 (1993) (plurality

opinion)). Further, there is a strong general presumption against finding that federal

law has preempted state law. *Resident Action Council*, 177 Wn.2d at 444-45 (citing

*State v. Kalakosky*, 121 Wn.2d 525, 546, 852 P.2d 1064 (1993)). If federal law does

not preempt state law, state law applies and our analysis ends. *Gilstrap v. United Air*

*Lines, Inc.*, 709 F.3d 995, 1006 (9th Cir. 2013).

> ### A. The Third and Ninth Circuits Have Both Ruled That the Federal Aviation Act Is Not Pervasive Enough To Preempt State Aviation Law

This court has not yet ruled on whether the Federal Aviation Act preempts state

product liability claims relating to aviation safety. However, a number of federal

circuit courts have, and we give "'great weight'" to those decisions. *State v.*

*McCormack*, 117 Wn.2d 141, 144, 812 P.2d 483 (1991) (quoting *Home Ins. Co. of*

*N.Y. v. N. Pac. Ry. Co.*, 18 Wn.2d 798, 808, 140 P.2d 507 (1943)).

A recent Third Circuit decision, not published when the trial court and the Court of Appeals made their rulings, deals directly with the issue in this case. In *Sikkelee*, 822 F.3d at 680, a single-propeller aircraft crashed and killed David Sikkelee. *Id.* at 685. His estate brought suit against the engine manufacturer, alleging that a carburetor identical to the one in this case had malfunctioned and caused the engine to stall. *Id.* The only difference is that the claim in *Sikkelee* was against the federally certified manufacturer of an entire engine, not the producer of an engine component (like FTI). *Id.* Nevertheless, the court held that although the Federal Aviation Act preempts the field of aviation safety, "neither the Act nor the issuance of a [federal manufacturing] certificate per se preempts all aircraft design and manufacturing claims." *Id.* at 683. It further held that even the extensive regulations governing certificate holders "do not purport to govern the manufacture and design of aircraft per se or to establish a general standard of care." *Id.* at 694. The court concluded that neither the Federal Aviation Act nor the regulations promulgated under it "'were [ever] intended to create federal standards of care' for manufacturing and design defect claims." *Id.* at 695 (alteration in original) (noting the holding in *Abdullah v. American Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999) (quoting *Sikkelee v. Precision Airmotive Corp.*, 45 F. Supp. 3d 431, 437 n.4 (2014), *vacated*, 822 F.3d 680)). Because of this, the regulations did not "indicate a clear and manifest congressional intent to preempt state law products liability claims." *Id.* at 696.

9

Here, we similarly find that federal law does not preempt state product liability law. The Court of Appeals held that state law was preempted because federal regulations pervasively regulated the area of the "engine's fuel system." *Becker*, 192 Wn. App. at 76. It cited 12 federal regulations, noting that they all focus on "performance and safety standards" for aircraft engines. *Id.* at 76-79. However, they do not attempt to regulate aircraft manufacture or design in and of itself. As noted in *Sikkelee*, these regulations were not designed to supplant state standards of care. 822 F.3d at 695. Rather, the Federal Aviation Act directs the FAA to create "'minimum standards'" surrounding aviation safety. *See id.* at 692-93 (quoting 49 U.S.C. § 44701(a)(1)). This indicates that federal regulations are a floor for engine design standards, not a ceiling limiting state tort remedies.

The Ninth Circuit has also addressed when the Federal Aviation Act preempts state product liability law. In *Montalvo v. Spirit Airlines*, 508 F.3d 464, 469 (9th Cir. 2007), a group of plaintiffs sued a group of airlines under state tort law, claiming the airlines had a duty to warn passengers about the increased risk of contracting deep vein thrombosis from sitting for prolonged periods in cramped airplane seats. There, the court held that the plaintiffs' state law claims were preempted because a comprehensive and pervasive set of federal regulations "clearly indicated [Congress'] intent to be the sole regulator of aviation safety." *Id.* at 473-74 (noting, as *Sikkelee* did, the holding in *Abdullah*, 181 F.3d 363). However, the court narrowed this

holding in *Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806 (9th Cir. 2009). In that case, a woman fell down a flight of airstairs and sued the airline under a theory of state strict product liability. *Id.* The court held the product liability claim was *not* preempted, stating that the FAA had not "comprehensively regulated" the allegedly defective stairs and so had not intended to preempt state law. *Id.* at 812. It distinguished *Montalvo*, noting that in that case, the court had based its ruling on the pervasive regulations of "warnings to passengers." *Id.* at 809-10. It further noted that the agency in *Montalvo* "intended its list of warnings to be comprehensive," demonstrating an intent to preempt state law. *Id.* at 810.

Here, as in *Martin*, the regulations are not comprehensive or pervasive enough to show Congress' intent to preempt state law. The Federal Aviation Act under which these regulations were promulgated gave the FAA power to generate "minimum standards" for aviation safety. 49 U.S.C. § 44701(a)(1). It was not designed to take the place of state tort remedies, but rather to create a federal minimum. As in *Martin*, these regulations are not so pervasive as to preempt state law. 555 F.3d at 812. Also like *Martin*, FTI does not cite a comprehensive set of requirements akin to the list of warnings found in *Montalvo*. *Id.* at 810. Rather, it identifies a set of baseline requirements for certified manufacturers. 14 C.F.R. §§ 23.1, 25.1, 33.1. Because of this, there is no clear indication that Congress intended to preempt state product liability. Without this intent, we cannot find that federal law preempts state law.

11

### B. The History of the Federal Aviation Act Also Demonstrates That Congress Never Intended the Act To Preempt State Law

Finally, the history of the Federal Aviation Act strongly supports the conclusion that Congress did not intend the act to preempt state product liability law.[2] In 1989, Congress rejected the General Aviation Accident Liability Standards Act of 1989. *See* SENATE COMM. ON COMMERCE, SCI. & TRANSP., S.B. REP. ON S. 640, 101st Cong. (1989) (COMMERCE REPORT); SENATE COMM. ON JUDICIARY, S.B. REP. ON S. 640, 101st Cong. (1990) (JUDICIARY REPORT). This act would have preempted all state tort liability for general aviation accidents. COMMERCE REPORT, *supra*, at 13, 20. Members of the Committee on the Judiciary were concerned that passing the bill would have "take[n] from individual States the right to determine their own standard of liability . . . ." JUDICIARY REPORT, *supra*, at 27. Congress considered and again rejected an identical bill in 1993. S. 67, 103rd Cong. (1993).

Congress also adopted an amendment to the Federal Aviation Act in 1994 stating that remedies provided for under the statute were "in addition to any other remedies provided by law." Act of July 5, 1994, Pub. L. No. 103-272, 108 Stat. 1118, § 40120(c) (codified as 49 U.S.C. § 40120(c)). This statute retains existing state tort law, adding federal remedies only as a supplement to state remedies. It indicates that Congress intended to create a federal alternative, not limit state options.

---

[2] The Third Circuit also found this congressional history persuasive. *Sikkelee*, 822 F.3d at 696.

Also in 1994, Congress passed the General Aviation Revitalization Act of 1994. Pub. L. No. 103-298, 108 Stat. 1552. That law amended the Federal Aviation Act to create a statute of repose explicitly limiting aircraft manufacturers' state tort liability. *Id.* Again, the Committee on the Judiciary noted that it "voted to permit, in this exceptional instance, *a very limited Federal preemption of State law*." HOUSE COMM. ON JUDICIARY, H.B. REP. NO. 103-525, pt. 2, at 4, 103rd Cong. (1994) (emphasis added).

Congress' actions represent two opportunities to preempt state law that it chose not to take: one successful attempt to protect state law, and finally an extremely targeted and explicit preemption of state law. Congress, far from expressing an intent to preempt state law, has avoided federal preemption in all but the most limited circumstances.

### C. Congress Did Not Intend To Preempt State Law

This court finds federal preemption if federal regulations are so pervasive as to indicate that Congress intended to preempt that area of law. However, there is a general presumption against finding implied federal preemption. Here, the Third Circuit ruled on this precise issue and found that federal regulations do not preempt state law. The Ninth Circuit has found that regulations must be both pervasive and comprehensive to have preclusive effect. Congress itself has chosen not to preempt state law except in the most limited circumstances. The regulations here are not so

13

pervasive as to rebut the presumption against preemption. Because of this, we follow the federal circuit decisions and find the regulations promulgated under the Federal Aviation Act do not preempt state product liability under these circumstances.

2. *We Do Not Reach the Issue of Whether the Trial Court Erred When It Did Not Grant the Estate's Motion for Leave To File a Third Amended Complaint*

The Estate contends that the trial court erred when it denied the Estate's motion for leave to file a third amended complaint. We do not reach this issue because we have already ruled on the preemption issue here. The proposed amendment was designed to address the additional federal violations at the trial court level. Because we have held that federal law does not preempt state law in this case, whether the Estate was allowed to include federal violations in addition to state violations at the trial level is moot.

## CONCLUSION

We hold that regulations promulgated under the Federal Aviation Act do not preempt state product liability law. As noted by the Third Circuit, Congress designed these regulations to establish federal minimum standards, not to comprehensively regulate the entire aviation industry. They do not show congressional intent to preempt state product liability law. Because we have ruled that federal law does not preempt state law in this case, we need not address whether the trial court erred in denying the Estate leave to amend its complaint. Therefore, we reverse the Court of

14

Appeals and remand to the trial court for further proceedings consistent with this

decision.

Owens, J.

WE CONCUR:

Madsen, J.

Johnson, J.

Fairhurst, C.J.

Stephens, J.

Wiggins, J.

González, J.

Gordon McCloud, J.

Yu, J.