IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROBERT L. DELGARDO, JR. and TRACEY DELGARDO, | ) ) | No. 76592-2-I |
| | ) | DIVISION ONE |
| Respondents, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KATRINA M. PIPER and RONALD PIPER, husband and wife and their marital community, and TODDLER TECH DEVELOPMENT ACADEMY, INC., a Washington Corporation, | ) ) ) ) ) | UNPUBLISHED OPINION |
| | ) | |
| Appellants, | ) | |
| | ) | |
| PAULETTE PERRY and "JOHN DOE" PERRY, husband and wife and their marital community, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | FILED: March 4, 2019 |

SCHINDLER, J. — Katrina Piper and Toddler Tech Development Academy Inc.

(TTDA) appeal the trial court order on summary judgment enforcing a CR 2A settlement

agreement and the $75,000 judgment against Piper and TTDA jointly and severally. We

reverse, vacate the judgment, and remand.

FACTS

Robert Delgardo owned and operated a day care at the Southside Church of Christ. Katrina Piper and Paulette Perry worked at the day care. In July 2012, Robert agreed to sell the day care to Piper, Perry, and his spouse Tracey Delgardo.[1]

On December 12, 2013, Robert filed a "Complaint for Breach of Oral Contract" against Piper, Perry, and Toddler Tech Development Academy Inc. (TTDA). Robert filed a motion to dismiss Perry.[2] The court dismissed the claims against Perry with prejudice.

On January 28, 2014, Piper and TTDA filed an answer, affirmative defenses, and counterclaims against Robert and a third party complaint against Tracey. On June 20, Tracey filed an answer, affirmative defenses, and counterclaims against Piper for breach of contract and breach of fiduciary duty.

The jury trial began May 18, 2015. At the end of the second day of trial, the parties agreed to negotiate a resolution of the claims. The court excused the jury to allow the parties to come to a resolution.

On May 21, 2015, the parties signed a "CR 2A Stipulation of Settlement and Agreement to Enforce" (Agreement). The Agreement states:

> [T]he Parties . . . have agreed to a global settlement of all claims and counterclaims in [King County Superior Court] Cause #13-2-41577-1 and to release each party of any claims for liability or damages arising out of the facts underlying the above-captioned matter.

The Agreement states that "[i]n return and in consideration for release of liability" of Perry, Piper, and TTDA "and dismissal of all claims with prejudice," TTDA agreed to

_____

[1] We refer to Robert Delgardo and Tracey Delgardo by their first names for clarity.
[2] Perry is Tracey's sister. Perry is not a party to this appeal.

2

purchase the day care for $75,000. TTDA agreed to pay Robert $3,000 by June 30, 2015 and "monthly installment payments of $1,000 beginning on July 30, 2015." Piper and Tracy agreed to become partners in the ownership of TTDA effective January 1, 2016. But the Agreement states the parties recognized the Agreement was incomplete and agreed to work "in good faith . . . to finalize" the Agreement by January 1, 2016:

> This Agreement is made and entered into this 21st day of May, 2015, by and between Plaintiff Robert Delgardo, Defendants Paulette Perry, Katrina Piper, and Toddler Tech Development Academy (TTDA), and Third-Party Defendant Tracey Delgardo (hereinafter "the Parties") in the matter of Delgardo v. Perry, et al..
>
> . . . All parties understand and agree to abide by the following terms and it is further understood that the following terms shall be enforced and upheld by any judge. Further, each party understands that additional terms of this settlement agreement need to be determined and agreed upon no later than January 1, 2016 and that the parties will work towards that end in good faith and that their agreement to finalize and memorialize this Agreement in greater detail is enforceable by this CR2A Agreement.

Robert, Piper, Perry, and Tracey signed the Agreement.

The trial court declared a mistrial and discharged the jury because the parties had reached a "[p]otential resolution." The trial judge conducted a mediation to assist the parties in their efforts to finalize the Agreement. The mediation failed to produce an agreement on the additional terms.

On June 23, 2015, Robert sent an e-mail to Piper agreeing to execute a release of Piper and TTDA in exchange for "the $3,000 payment on or before June 30, 2015 and monthly installment payments of $1,000."[3] Piper responded, "Since you were unwilling to meet with myself and the church, then you and I need to discuss the terms that need to be in writing to finalize the settlement as per the CR2A."

_____

[3] Emphasis omitted.

3

On August 19, Robert filed a motion to "Enforce Parties' CR 2A Agreement" and enter judgment against TTDA in the amount $75,000.

In the declaration Tracey submitted in support of the motion to enforce, Tracey attached e-mails she sent Piper. In a June 2015 e-mail to Piper, Tracey states, "[W]e should go forward with working on the additional terms of the agreed upon settlement." In response to the e-mail, Piper states that Robert needs to respond so they can "solidify" the "settlement price and additional terms."

Piper opposed the motion to enforce the Agreement. In her declaration, Piper states she made concerted but unsuccessful efforts to negotiate the additional terms with Robert.

Because the trial judge conducted the mediation, the case was transferred to a different judge. The judge denied the motion to enforce the Agreement without prejudice. The court ordered Robert and Tracey to "[c]ontinue to work in good faith with Defendants toward a resolution on all disputed or supplemental terms." If the parties could not agree on a final settlement agreement and release of liability before February 26, 2016, the court ordered the parties to schedule a mediation. If mediation was not successful, the order states the "matter shall be set for reconsideration."

As ordered, Piper, Tracey, and Robert engaged in a second mediation but again, could not agree on the additional terms of the Agreement.

Robert and Tracey filed a motion for "Reformation and Enforcement of the CR2A Agreement, Unjust Enrichment, [and] Appointment of a Receiver." Piper filed a motion to dismiss the lawsuit. Piper argued the Agreement was unenforceable. Piper asserted

4

the Agreement lacked mutual assent because the parties could not agree on critical additional terms.

The court denied the motion to dismiss. The court entered an order on the motion to enforce the Agreement. The court found "[t]here is no genuine dispute over any material term" and the Agreement is a "valid and enforceable" agreement. The court concluded the "CR2A provided for mutual releases of liability, payments to Mr. Delgardo for TTDA on a schedule, and ownership of TTDA as a partnership between Ms. Piper and Ms. Delgardo." The court concluded the "[a]dditional terms of the partnership and any drafting and execution of a written partnership agreement was the only 'open' term in the CR2A."[4] However, the court concluded there were material issues of fact on the following:

a. Did any party breach the CR2A?
b. When exactly did such breach, if any, occur?
c. Did any such breach relieve any other party from performing his or her duties under the CR2A?

The court entered an order setting a January 23, 2017 trial date and deadlines for filing dispositive motions.

Robert and Tracey filed a motion for summary judgment, arguing Piper breached the Agreement by not complying with the agreed upon terms to make payments to Robert and to enter into the partnership with Tracey. The trial court granted the motion for summary judgment. The court entered a $75,000 judgment against TTDA and Piper jointly and severally. The court denied the motion for reconsideration.

---

[4] The court notes Piper "was a signatory and party to the CR2A even though, prior to her entering into and signing the CR2A, she had been dismissed as a party to this lawsuit."

ANALYSIS

Piper contends the court erred in ruling the Agreement is an enforceable contract and entering judgment against TTDA and Piper jointly and severally.

We review an order of summary judgment de novo and engage in the same inquiry as the trial court. Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 709-10, 375 P.3d 596 (2016). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014). We consider all facts and all reasonable factual inferences in the light most favorable to the nonmoving party. Young v. Key Pharm., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989). "[I]f reasonable minds could reach only one conclusion from the evidence presented," summary judgment should be granted. Estate of Becker v. Avco Corp., 187 Wn.2d 615, 621, 387 P.3d 1066 (2017); Allen v. State, 118 Wn.2d 753, 760, 826 P.2d 200 (1992).[5]

The rules of contract interpretation apply to a CR 2A agreement. In re Marriage of Pascale, 173 Wn. App. 836, 841, 295 P.3d 805 (2013). The interpretation of a contract is a question of law we review de novo. Berg v. Hudesman, 115 Wn.2d 657, 668, 801 P.2d 222 (1990); Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

Our primary goal is to ascertain the intent of the parties. Berg, 115 Wn.2d at 663. We determine intent by focusing on the objective manifestation of the parties in the written contract. Hearst, 154 Wn.2d at 503. Accordingly, we consider only what the

---

[5] The decision in the order granting summary judgment includes extensive findings of fact and conclusions of law that we do not consider on appeal. Oltman v. Holland Am. Line USA, Inc., 163 Wn.2d 236, 249 n.10, 178 P.3d 981 (2008).

parties wrote; giving words in a contract their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates a contrary intent. Hearst, 154 Wn.2d at 503-504. A contract " 'should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions.' " Colo. Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 588, 167 P.3d 1125 (2007)[6] (quoting Colo. Structures, Inc. v. Ins. Co. of the W., 125 Wn. App. 907, 915-16, 106 P.3d 815 (2005)).

An enforceable contract requires "a mutual intention or 'meeting of the minds' on the essential terms of the agreement." Saluteen-Maschersky v. Countrywide Funding Corp., 105 Wn. App. 846, 851, 22 P.3d 804 (2001). The terms agreed to must be sufficiently definite. Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 178, 94 P.3d 945 (2004). If an offer is so indefinite that a court cannot decide just what it means and fix exactly the legal liability of the parties, acceptance does not result in an enforceable agreement. Sandeman v. Sayres, 50 Wn.2d 539, 541, 314 P.2d 428 (1957).

Apart from a standard enforceable contract with all material terms agreed to, the Washington Supreme court has identified three different but similar types of agreements regarding which disputes may arise. P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 208, 289 P.3d 638 (2012); Keystone, 152 Wn.2d at 175-76.[7]

The first type of agreement is an agreement to agree. Keystone, 152 Wn.2d at 175. "An agreement to agree is 'an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete.' " Keystone, 152 Wn.2d at 175 (quoting Sandeman, 50 Wn.2d at 541-42); Badgett v. Sec.

---

[6] Footnote omitted.

[7] We asked the parties to address Keystone and P.E. Systems at oral argument.

State Bank, 116 Wn.2d 563, 574, 807 P.2d 356 (1991); see also RESTATEMENT (FIRST) OF CONTRACTS § 26, cmt. a (AM. LAW INST. 1932) (If it is apparent that the determination of certain terms is deferred, the preliminary negotiations and agreements are incomplete and do not constitute a contract.). "Agreements to agree are unenforceable in Washington." Keystone, 152 Wn.2d at 176.

The second type of agreement is "an agreement with open terms." Keystone, 152 Wn.2d at 176. In an agreement with open terms, the parties "intend to be bound by the key points agreed upon with the remaining terms supplied by a court or another authoritative source." Keystone, 152 Wn.2d at 176.

The third type of agreement is "a contract to negotiate." Keystone, 152 Wn.2d at 176.

> In a contract to negotiate, the parties exchange promises to conform to a specific course of conduct during negotiations, such as negotiating in good faith, exclusively with each other, or for a specific period of time. Under a contract to negotiate, the parties do not intend to be bound if negotiations fail to reach ultimate agreement on the substantive deal.

Keystone, 152 Wn.2d at 176 (citing E. ALLAN FARNSWORTH, Precontractual Liability and Preliminary Agreements: Fair Dealing and Failed Negotiations, 87 COLUM. L. REV. 217, 263 (1987)). Under a contract to negotiate, no breach occurs "if the parties fail to reach agreement on the substantive deal. The contract to negotiate is breached only when one party fails to conform to the specific course of conduct agreed upon." Keystone, 152 Wn.2d at 176.

In determining mutual assent, we focus on the objective manifestations of the agreement. Hearst, 154 Wn.2d at 503. A party seeking specific performance must show " 'clear and unequivocal' evidence that 'leaves no doubt as to the terms,

character, and existence of the contract.' " <u>Kruse v. Hemp</u>, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993)[8] (quoting <u>Powers v. Hastings</u>, 93 Wn.2d 709, 713, 612 P.2d 371 (1980)).

Here, the Agreement states the parties agreed to settle all claims according to the terms agreed upon "and any other supplement terms agreed to hereafter." The plain and unambiguous language of the Agreement recognized the Agreement was incomplete and required the negotiation of and agreement to additional terms:

> [E]ach party understands that additional terms of this settlement need to be determined and agreed upon no later than January 1, 2016 and that the parties will work towards that end in good faith and that their agreement to finalize and memorialize this Agreement in greater detail is enforceable by this CR2A Agreement.

The uncontroverted record establishes the parties did not agree on the additional terms. Absent agreement on the additional terms, the Agreement is incomplete and unenforceable. <u>Keystone</u>, 152 Wn.2d at 175-76. And even if the additional terms relate only to the details of the partnership, without agreement on the terms of a partnership agreement, the Agreement is not complete or enforceable. Because the language of the Agreement unequivocally demonstrates an intent to negotiate the additional terms, we conclude the Agreement is unenforceable.

Although the Agreement is not enforceable, the agreement to work in good faith to reach an agreement on the additional terms is enforceable. A "contract to negotiate is breached only when one party fails to conform to the specific course of conduct agreed upon." <u>Keystone</u>, 152 Wn.2d at 176. If on remand the trial court finds either party breached the agreement to negotiate in good faith, the other party may be entitled to damages. <u>Colum. Park Golf Course, Inc. v. City of Kennewick</u>, 160 Wn. App. 66, 84,

---

[8] Internal quotation marks omitted.

9

248 P.3d 1067 (2011). Where there is no final agreement, a party "might be unable to prove expectation damages with the required certainty and be left to reliance damages." Colum. Park, 160 Wn. App. at 84.

We also conclude the court erred in entering a $75,000 judgment against TTDA and Piper jointly and severally. The plain and unambiguous language of the Agreement states only TTDA agreed to make payments to Robert to purchase the day care.

We reverse the decision to enforce the Agreement, vacate the judgment, and remand to determine whether the parties acted in good faith to negotiate the additional terms of the Agreement.

Schindler, J

WE CONCUR:

Smith, J.

Becker, J. P.T.