51 P.3d 138 (2002)
112 Wash.App. 778
STATE of Washington, Respondent,
v.
Jerry Dawayne CHEATAM, Appellant.
No. 26695-4-II.
Court of Appeals of Washington, Division 2.
August 2, 2002.
*139 Pattie Mhoon (Court Appointed), Tacoma, for Appellant.
John Martin Neeb, Pierce Co. Deputy Pros. Atty., Tacoma, for Respondent.

PART PUBLISHED OPINION
BRIDGEWATER, J.
Jerry Dawayne Cheatam appeals his first degree rape with a deadly weapon jury conviction. We affirm.
On the early morning of January 5, 1996, a rapist, with a knife in hand, grabbed 16-year-old M.M. by the neck from behind while she was walking to a bus stop. The rapist told M.M. not to scream and led her to a nearby ditch in a backyard to rape her. According to M.M., the rapist, whom she later identified as Cheatam, instructed her to lie down and take her pants off. M.M. told Cheatam that she was menstruating, thinking this would dissuade him. It did not. M.M. asked Cheatam if he wanted her to remove her tampon. Cheatam said yes and M.M. did so. Cheatam continued to hold M.M. by the neck and let go for only a brief moment to pass the knife from one hand to the other. M.M. remained calm while Cheatam put M.M.'s legs over his head. When M.M. heard what sounded like paper ripping, she looked at Cheatam's face for about five *140 seconds with the purpose of remembering it. When Cheatam finished raping M.M., she pulled her pants up. Cheatam then put his arm around M.M.'s shoulder and walked her back to the bus stop. He told M.M. that if she told anyone, he would hurt her. After Cheatam ran away, M.M. ran home.
A physical examination of M.M. produced no additional evidence of the rape; Cheatam used a condom. M.M.'s description to a sketch artist, however, produced a strikingly accurate composite drawing of Cheatam, and M.M. was later able to identify Cheatam in a photo montage and at trial. M.M. testified that when she selected Cheatam in a photo montage; she carefully looked at all the photos, narrowed her selection to two people, and then with certainty picked Cheatam. At trial, the victim described Cheatam as wearing a dark navy blue hooded sweatshirt, about 5'6" to 5'7" in height, medium to thin build, with short hair.
A jury convicted Cheatam of first degree rape with a deadly weapon.[1]

I. Motion to suppress
Cheatam contends that under the Fourth Amendment to the United States Constitution and Article I, section 7, of the state constitution, the trial court erred in denying his motion to suppress his shoes. He argues that although police had a search warrant for his home and could have legally seized, after he was arrested and booked, the shoes he was wearing, the police could not go to the jail's inmate property room four days later and seize his shoes. Cheatam specifically argues that the search warrant did not extend to his personal property held in the jail's inmate property room and that, similar to an impounded vehicle, he had a legitimate expectation of privacy in his personal property placed in the inmate property room.
When reviewing a suppression motion, we determine whether substantial evidence supports the trial court's findings and whether those findings support its conclusions of law. State v. Hagen, 55 Wash.App. 494, 498, 781 P.2d 892 (1989). Cheatam does not assign error to the court's findings of fact; thus, they are considered verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). We review conclusions of law de novo. State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996).
The parties stipulated that on June 6, 1996, the police obtained a telephonic search warrant for Cheatam's home. Cheatam was at his home during the search and before police transported him to the jail, he put on a pair of shoes. Although Cheatam was not charged with M.M.'s rape, Detective Loren Page interviewed Cheatam regarding M.M.'s rape at the jail. When Cheatam was booked, corrections personnel inventoried his personal effects and stored them in their inmate property room.
On June 7, 1996, the telephonic search warrant was reduced to writing. It also was expanded to include specific items, including an unknown shoe matching a photograph in evidence, and other rape victims.[2] While police seized a pair of shoes from Cheatam's home, those shoes did not match the photograph of the shoe imprint left on the hillside of the ditch in M.M.'s case. Detective Page later learned that another pair of Cheatam's shoes, the pair he wore during booking, was in the inmate property room. The parties agree that the bag used to hold Cheatam's personal property was not secured and that corrections staff had access to it. Four days after the search warrant was issued, June 10, 1996, Detective Page went to the inmate property room and seized Cheatam's shoes. Detective Page determined and the forensic department confirmed that Cheatam's shoes' tread pattern was similar to that in the photograph.
At the suppression hearing, Vince Conner, a corrections officer, testified regarding booking procedures and inmate property. Conner described the property bag as a canvas bag with a hanger on top and a zipper. According to Conner, the property room did *141 not have a lock, and corrections staff could access and inspect an inmate's property at any time and without an inmate's consent. The inmate, however, needed to request access to his property, which the jail, within its discretion, could deny.
Conner also testified that the purpose of the property card that is filled out at the time of booking is to keep track of inmate property in its custody. The parties agree that at the time of booking, Cheatam did not have a legitimate expectation of privacy in the shoes he wore. Cheatam argues, however, that the police lost their opportunity to obtain his shoes without a search warrant as soon as the shoes were placed in the inmate property room and not the evidence room. The State argues, on the other hand, that the search warrant for Cheatam's home included an unknown shoe that matched the shoe print left at the crime scene in M.M.'s case, that the warrant extended to the shoes he wore at booking, and that Cheatam had no legitimate expectation of privacy in those shoes.
a. scope of search warrant
With regard to Cheatam's first argument, that the search warrant did not extend to his property in the inmate property room, he is correct. Pursuant to the Fourth Amendment, an officer must execute a search warrant strictly within the bounds set by the warrant. State v. Kelley, 52 Wash.App. 581, 585, 762 P.2d 20 (1988). Whether a search exceeds the scope of a warrant depends on a common sense reading of the warrant. State v. Anderson, 41 Wash.App. 85, 96, 702 P.2d 481 (1985), rev'd on other grounds, 107 Wash.2d 745, 733 P.2d 517 (1987).
The written search warrant here specifically included the incident number for M.M.'s rape case and indicated that police were looking for a shoe matching a photograph of a shoeprint left at M.M.'s crime scene. Although the shoe was at Cheatam's home at the time the police executed the search warrant, the police never seized the shoes. Nor did police seize the shoes when Cheatam was booked. As Cheatam asserts, once the shoes were placed in the inmate property room and not the evidence room, it fell outside the scope of the search warrant. The time for police to seize Cheatam's shoes was at the home or during arrest. See State v. White, 44 Wash.App. 276, 278, 722 P.2d 118, review denied, 107 Wash.2d 1006 (1986) (property seized incident to lawful arrest may be used to prosecute the arrested person for an unrelated crime). Thus, police seized Cheatam's shoes without a warrant.
b. expectation of privacy/private affairs
However, the police's seizure of Cheatam's shoes was lawful if, under the Fourth Amendment, Cheatam did not have a legitimate expectation of privacy in his property held in the inmate property room, and under article I, section 7, his shoes were not a part of his private affairs.
The Fourth Amendment to the United States Constitution protects an individual's "privacy interest."[3] For a search to fall within the proscription of the Fourth Amendment, the person "invoking its protection must claim state invasion of a justifiable, reasonable, or a legitimate expectation of privacy." State v. Crandall, 39 Wash.App. 849, 852, 697 P.2d 250, review denied, 103 Wash.2d 1036 (1985) (citations omitted). That expectation raises two questions: (1) whether the individual by conduct has exhibited a subjective expectation of privacy; and (2) whether society is prepared to recognize that expectation as reasonable. Crandall, 39 Wash.App. at 852, 697 P.2d 250 (citations omitted).
The United States Supreme Court has held, under the Fourth Amendment, that a defendant has no reasonable expectation of privacy in property jail personnel seize from a defendant upon arrival after a lawful arrest. United States v. Edwards, 415 U.S. 800, 807-08, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). That a substantial period of time has *142 elapsed between the arrest and subsequent administrative processing is without consequence. Edwards, 415 U.S. at 807, 94 S.Ct. 1234. The result is also the same when jail personnel do not physically take the defendant's property until some time after his incarceration. Edwards, 415 U.S. at 807-08, 94 S.Ct. 1234. Thus, where police have lawful custody of the defendant and the clothing the defendant wears, if it becomes apparent that the clothing is evidence of the crime the defendant is being held for, police are entitled to take, examine, and preserve the defendant's clothing for use as evidence, just as they are normally permitted to seize evidence of a crime when lawfully encountered. Edwards, 415 U.S. at 806-08, 94 S.Ct. 1234.
It is clear that under Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771, Cheatam can find no protection under the Fourth Amendment. Consequently, review of Cheatam's privacy interest is limited to an examination under our state constitution. The following six non-exclusive criteria must be examined in order to determine whether article I, section 7 of our state constitution provides greater protection of a defendant's privacy interest than its federal counterpart: "(1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern." State v. Boland, 115 Wash.2d 571, 575, 800 P.2d 1112 (1990), (citing State v. Gunwall, 106 Wash.2d 54, 58, 720 P.2d 808 (1986)). However, no Gunwall analysis is necessary when established principles of state constitutional jurisprudence are applied. State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998).
It is undisputed that a defendant does not have a legitimate expectation of privacy in their shoe tread pattern. See State v. Selvidge, 30 Wash.App. 406, 412, 635 P.2d 736 (1981) (an officer's observation of the defendants' shoe's soles did not constitute a search), review denied, 97 Wash.2d 1002 (1982). What a person voluntarily exposes to the general public is not considered part of a person's private affairs. State v. Young, 123 Wash.2d 173, 182, 867 P.2d 593 (1994).
In State v. Simpson, 95 Wash.2d 170, 622 P.2d 1199 (1980), our Supreme Court held that where police arrested a defendant on a warrant charging him with first degree forgery, police could not use the vehicle's key, which it had inventoried and placed in a property box, to unlock the vehicle and check the vehicle's identification number to determine whether the vehicle was stolen, when the vehicle was legally parked and not in police custody. The court in Simpson did not determine that the key was within Simpson's privacy rightsit was concerned with the interior of the locked vehicle.
Similar to the defendant in Simpson, police arrested Cheatam for an unrelated rape. However, Cheatam's shoes, which he wore when he was in custody, were in the jail's custody, not Cheatam's; thus, they were not within the purview of his private affairs. Nor did Cheatam have a reasonable expectation of privacy in his shoes at that time. Cheatam did not secure his shoes in anyway from the view of others and did not take any action to keep them within his private affairs.
In addition, Cheatam could not have had a reasonable expectation of privacy in the property room, which also is clearly not a part of his private affairs. The room was unlocked and accessible by jail personnel. That the jail distributed to its staff a reminder that inmate property would not be released, except by the inmate's request or court order, is inconsequential. The reminder's purpose was not developed on the record and is not available for review.
Thus, while the State has the burden of proving an exception to the warrant requirement, State v. Hendrickson, 129 Wash.2d 61, 71, 917 P.2d 563 (1996), Cheatam had the burden as the person asserting an unlawful search or seizure under article 1, section 7 of proving a disturbance of his or her private affairs. State v. O'Neill, 104 Wash.App. 850, 859, 17 P.3d 682, review granted, 144 Wash.2d 1008, 31 P.3d 1185 (2001); State v. Thorn, 129 Wash.2d 347, 354, 917 P.2d 108 (1996). A privacy interest must be reasonable to warrant protection even under article 1, section 7. See State v. Goucher, 124 Wash.2d 778, 784, 881 P.2d 210 (1994). Cheatam has not shown a reasonable privacy *143 interest and has not shown a disturbance of his private affairs; thus, his argument fails.[4]
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
MORGAN, P.J., and ARMSTRONG, J., concur.
NOTES
[1] Cheatam appeals from the second trial; the first ended in a mistrial. He also appeals the pretrial motions heard in the first trial and not reargued in the second.
[2] The written search warrants were offered but not admitted as evidence and were available to the trial court.
[3] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. 4.
[4] Furthermore, although police did not have a proper search warrant to seize Cheatam's shoes, and Cheatam did not have a privacy interest in his shoes while they were in police custody and in the inmate property room, police did have probable cause to seize Cheatam's shoes. Thus, police could seize Cheatam's shoe from the property room and inspect it without obtaining a warrant.