# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47927-3-II |
| Respondent, | |
| v. | |
| CURTIS WALTER HORTON, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Curtis W. Horton sought discretionary review of the trial court's order denying his CrR 3.6 motion to suppress evidence following a search of property that he did not own. He argues that the trial court erred in concluding that (1) he did not have a reasonable expectation of privacy in the areas where his Jeep and recreational vehicle (RV) were located because he did not own the searched property and (2) the officers did not conduct a search because they were on the curtilage when they observed the evidence. We hold that the trial court erred when it concluded as a matter of law that Horton did not have a reasonable expectation of privacy in the areas searched because he did not own the property. Accordingly, we reverse the trial court's order denying the CrR 3.6 motion and remand for further proceedings, including another suppression motion.

## FACTS

### I. SEARCH

On August 30, 2013, several law enforcement officers responded to a possible single vehicle collision and rollover on a beach near Moclips. The 911 caller who reported the accident stated that a white car and a dark-colored Jeep had been doing donuts on the beach and that the Jeep had rolled over.

When the officers arrived at the scene, the Jeep was gone and fire personnel were already caring for the injured Jeep passenger, Michael Walls. Park Rangers Joe Fernandez and Brad Staab and Washington State Patrol Trooper Justin Blake all spoke with Walls, who was conscious but appeared intoxicated. Walls told them that the vehicle that rolled over was a black Jeep, that the driver was "Corey," and that Corey had driven the Jeep towards Tidelands Resort where Walls's group was staying. Clerk's Papers (CP) at 16.

Staab left the beach and located a group of about 20 Jeep enthusiasts camping on private property, not owned by Horton, near the Tidelands Resort. Staab "entered [the property] from Railroad Road, [and] had to travel some distance across a grassy parking space to . . . access the campsite, which is tucked behind a permanent structure." CP at 17. Staab was aware he was on private property, and he later acknowledged that he had not been invited onto the property. Ranger Fernandez, Trooper Blake, and Grays Harbor County Sheriff's Deputy Russell also arrived at the campsite and entered the area "without permission, and without first ascertaining whether it was private or public property." CP at 17. The officers walked through the campsite and attempted to interview the campers, but the campers all stated that they did not know anything about an overturned Jeep.

After talking to the people at the campsite, Staab continued to look around the property. Staab found a set of "aggressive tire tracks" and followed them further into the property. CP at 17. He eventually found the Jeep that appeared to have been involved in the accident[1] "concealed by high brush and a six foot tall fence at the back of the property, approximately 80 yards off the roadway when accessed through the campsite, and about 25 yards from the nearest road running parallel to where the Jeep was parked." CP at 17.

Staab ran the Jeep's license plate and identified the registered owner as Horton. The officers then ran the license plates of the RVs on the property and located an RV registered to Horton. Horton's RV was 35 yards off the roadway and well within the campsite.

The officers contacted Horton in his RV; he appeared to be intoxicated. The officers observed that Horton had sand in his ears and blood on his pants. Although Horton denied driving the Jeep that day, Trooper Blake arrested Horton.

## II. PROCEDURE

The State charged Horton with vehicular assault. Horton filed a motion to suppress the evidence gathered by the officers after they entered the campsite.

In his motion, Horton argued that the officers engaged in an illegal warrantless search of private property under both the federal and state constitutions because they had no legal authority to enter the property and did not observe the evidence from a lawful vantage point. He also asserted

---

[1] The Jeep appeared to have damage consistent with a rollover accident and there was blood inside the vehicle.

that Horton had a protected privacy interest in the area surrounding the RV, including the area where the officers found the Jeep.[2]

Horton also argued,

> Where, as here, there is a private parcel of property accessible only from a private road, *in which the owner has allowed several guests to park temporary homes* away from the view of the road and in a manner indicating that what happens in the campground is not a matter for public consumption, the Court should find that the area surrounding the RVs, within the private property, is curtilage and only accessible in the manner of a reasonably respectful citizen on legitimate business.

CP at 28 (emphasis added).

During oral argument on the motion,[3] the State did not dispute that when the officers entered the property they did not know who owned the property. Horton's counsel asserted that the officers entered private property, but he admitted that Horton did not own the property and that he (counsel) did not know if Horton had a lawful right to be on the property.

The trial court's focus was on whether Horton had an "expectation of privacy" in relation to the property where the Jeep was found if he did not own the property or if he had any right to be on the property. Report of Proceedings (RP) at 17, 22. The trial court stated that the defendant must demonstrate a personal, legitimate expectation of privacy in the area searched to establish a Fourth Amendment violation. The trial court concluded that Horton had not "demonstrated any

---

[2] He also argued that exigent circumstances did not justify the warrantless search and that the officers lacked probable cause to detain him for further investigation or to arrest him, but he does not raise any issues regarding these arguments on appeal.

[3] Rather than hear testimony on the CrR 3.6 motion, the parties agreed to allow the trial court to rely on the facts set forth in Horton's motion to suppress. We note that because the trial court did not hold an evidentiary hearing, written findings of fact and conclusions of law were not required. CrR 3.6(b).

personal expectation of privacy as to that property." RP at 24. The trial court stated, "I'm denying [the CrR 3.6] motion. I just do not believe that there was any reasonable expectation of privacy when your client parked his Jeep in the bushes. He had no reason to expect that it wasn't going to be found, that someone might look at it." RP at 25. The trial court further concluded that the officers were "simply continuing their investigation" and that "they did so without conducting any searches, that they were simply within the curtilage areas of where these RV's [sic] were parked." RP at 29-30. The trial court denied Horton's motion to suppress.

Horton sought discretionary review of the order denying his CrR 3.6 motion to suppress. A commissioner of this court granted review.

## ANALYSIS

Horton argues that the trial court erred in concluding that (1) he did not have a privacy right as a matter of law under either the federal or state constitutions because he did not own the property and (2) the officers' conduct did not constitute a search because they observed the evidence from the curtilage of the camping area. We agree with Horton's first argument and because of this conclusion, we do not address whether the officers observed the Jeep's or the RV's license plate from a lawful vantage point.

The facts, as set out in Horton's motion to suppress and discussed in argument, are not disputed. We review the trial court's conclusions of law de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

A defendant asserting a search was unlawful under the Fourth Amendment has the initial burden of establishing "a justifiable, reasonable, or legitimate expectation of privacy in the thing examined." *State v. Carter*, 151 Wn.2d 118, 127, 85 P.3d 887 (2004). Similarly, a defendant

asserting a search was unlawful under article I, section 7 of the Washington Constitution has the initial burden "of proving a disturbance of his or her private affairs." *State v. Cheatam*, 112 Wn. App. 778, 787, 51 P.3d 138 (2002), *aff'd*, 150 Wn.2d 626, 81 P.3d 830 (2003). "A privacy interest must be reasonable to warrant protection even under article I, section 7." *Cheatam*, 112 Wn. App. at 787 (citing *State v. Goucher*, 124 Wn.2d 778, 784, 881 P.2d 210 (1994)).

Here, the trial court concluded that Horton had no "reasonable expectation of privacy," apparently because he did not own the property. RP at 25. The conclusion that a defendant must *own* property to assert any privacy interest is incorrect. For instance, an overnight guest in someone's home can have a legitimate, reasonable privacy interest inside the host's home. *See Minnesota v. Carter*, 525 U.S. 83, 89-90, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998) (citing *Minnesota v. Olson*, 495 U.S. 91, 98-99, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990)); *State v. Link*, 136 Wn. App. 685, 692, 150 P.3d 610 (2007). Thus, the trial court erred to the extent it concluded that Horton could not assert a privacy interest in the property as a matter of law because he was not the property owner.

We do not hold that the trial court must grant the suppression motion on remand. Instead, the trial court must determine whether Horton had a privacy interest even though he was not the owner of the property. We do not address this issue because the trial court did not consider it.

We reverse the trial court's denial of the suppression motion because Horton is not required to show he was the owner of the property to establish a reasonable expectation of privacy in the

area searched.[4]  We remand for further proceedings, including another suppression hearing, consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.

---

[4] Because of this holding, we do not address whether the officer observed the Jeep's or the RV's license plates from any areas that were impliedly open.