

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of Confidential Consumer Protection Investigation. | ) ) ) ) | No. 37662-1-III (Consolidated with No, 37689-3-III) |
| ─────────────────────── | ) ) ) | |
| KING FUJI RANCH, INC., KING FUJI RANCH, MT TRAGGARES, INC. DBA ARETE VINYARDS, BENCH ONE, INC., KING ORGANICS, INC. | ) ) ) ) ) ) | |
| Appellants, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| WASHINGTON STATE OFFICE OF THE ATTORNEY GENERAL, | ) ) ) | |
| Respondent. | ) | |

SIDDOWAY, J. — After King Fuji Ranch, Inc. and related entities (King Fuji) were

served with a civil investigative demand by the Washington State Attorney General's

Office (AGO), King Fuji petitioned the Grant County Superior Court to vacate the

demand.[1]  It was unsuccessful and now appeals trial court orders denying its request to vacate the demand and granting the AGO's motion to enforce it.

The subject matter of the AGO's investigation falls within the scope of activity prohibited by the Consumer Protection Act, chapter 19.86 RCW (CPA), which the AGO is authorized to enforce.  Conduct by King Fuji that may have violated the federal Immigration and Nationality Act (INA)[2] might be evidence that helps demonstrate a CPA violation, but contrary to King Fuji's arguments, that alone does not give rise to federal preemption.  For that reason, and because the civil investigative demand was not an unreasonable search and did not invade King Fuji's private affairs without authority of law as alleged by King Fuji, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

King Fuji is an agricultural business that grows apples and wine grapes.  It recruits some of its workers from other countries using the H-2A visa process provided by federal law.  Eligibility for the visas requires demonstrating that the job openings cannot be filled with United States (U.S.) workers.  As part of making that demonstration, King Fuji is required by federal law to submit a job order for approval by the state workforce agency designated by the state—in Washington, the Employment Security Department (ESD).

---

[1] The demand was addressed to King Fuji Ranch, Inc., King Fuji Ranch, ML Taggares, Inc. dba Arete Vineyards, Bench One, Inc., and King Organics, Inc.  We use "King Fuji" to refer to King Fuji Ranch, Inc. and to the related entities collectively.

[2] 8 U.S.C. ch. 12 (as amended).

The job order must identify the positions available and their hours, pay, and qualifications. Once the ESD approves a job order submitted by King Fuji, it begins recruiting U.S. workers and refers each U.S. worker who applies for the job opportunity. 20 C.F.R. § 655.121(c), (d).

In 2019, the AGO received information that King Fuji might have provided misleading information in the process of hiring H-2A workers the year before. It learned that the president of King Fuji had submitted a job order to the ESD in May 2018 for 101 farmworker/laborer positions stating, as job requirements, that previous work experience was preferred and specifying "[t]hree (3) months tree fruit experience." Clerk's Papers (CP(A)) at 402, 404.[3] It learned that on the same day, King Fuji's operations manager had e-mailed CSI Visa Processing, S.C., a farm labor contractor in Mexico, about its need to hire 101 workers for the season, but had provided different job requirement information. In his e-mail to CSI, the operations manager explained that King Fuji's only recruiting criteria for this "next group of guys," based on its experience with workers in prior seasons, was

- *Age – 35 and under*
- *Married*
- *Experience – Must be new to H2A program*

---

[3] The orders challenged on appeal were entered in two Grant County actions that we consolidated. Clerk's papers designated in the "anchor" case on appeal (*In re Confidential Consumer Protection Investigation*, No. 37662-1-III) are cited as CP(A). Clerk's papers designated in the "secondary" case on appeal (*King Fuji Ranch, Inc. et al. v. Off. of Att'y Gen.*, No. 37689-3-III) are cited as CP(S).

- *Desired States/Regions:*
  - *1/3 of group from State of Jalisco*
  - *1/3 of group from State of Nayarit*
  - *1/3 of group from South regions of Mexico (Oaxoca/Veracruz)*

CP(A) at 411 (boldface omitted). King Fuji eventually received federal certification that there were not sufficient U.S. workers available for the 101 positions it had available in 2018 and that its employment of H-2A workers would not adversely affect the wages and working conditions of U.S. workers.

The foregoing information led the AGO to serve a civil investigative demand on King Fuji on September 23, 2019. A civil investigative demand, or CID, is an investigative tool authorized by the CPA. The CID stated,

> The Demand is made pursuant to RCW 19.86.110. The Attorney General believes you have knowledge relevant to the subject matter of an investigation now in progress. Said investigation involves possible past or current violations of RCW 19.86.020 (unfair or deceptive acts or practices in the conduct of any trade or commerce), including but not limited to representations or omissions to obtain certification that there are insufficient U.S. workers for particular crop production and harvest in the area and permission to hire foreign guest workers.

CP(A) at 207. The CID included 16 interrogatories and 15 requests for production and required a response within 30 days. It was accompanied by orders the Attorney General had obtained several days earlier, ex parte, in a Thurston County Superior Court action entitled *In re Confidential Consumer Protection Investigation*. The orders prohibited King Fuji from disclosing the existence or contents of the CID to anyone but its counsel, retained jurisdiction over subsequent proceedings, and sealed the case file.

King Fuji responded by filing an action in Grant County Superior Court prior to the CID's return date. It requested a declaratory judgment that the AGO lacked authority for its investigation since the regulation of immigration is exclusively vested in the federal government. It sought an extension of the return date for the CID until the AGO's authority to issue it could be resolved. On the same day, King Fuji filed a motion in the Thurston County action seeking an order changing venue of that action to Grant County.

Both parties filed motions in the Thurston County action thereafter, and in mid-December 2019, the Thurston County Superior Court entered an order transferring the case to Grant County. It provided that its earlier orders prohibiting disclosure and sealing the file "shall remain in force and effect for 45 days or until further order of Grant County Superior Court or this court." CP(A) at 332. The Grant County court later denied the AG's motion to maintain and enforce the nondisclosure order and order sealing the file.

In February 2020, the AGO filed a petition in the transferred action for enforcement of its CID. King Fuji responded by filing a motion to vacate the CID in the action it had commenced. King Fuji argued that the INA "permits employers to hire temporary non-immigrant agricultural workers (H-2A workers) and provides the exclusive process by which the services of these workers may be obtained and utilized." CP(S) at 75 (footnote omitted). Accordingly, it argued, state law was preempted. It also

5

argued that the CID was an unlawful search and invasion of its private affairs under the federal and Washington Constitutions.

In responding to the motion to vacate the CID, the AGO denied King Fuji's allegations that the "'real focus'" of its investigation was "'alleged false statements to the federal government in the H-2A application'" and that its investigation was a "'disguised attempt to bring a lawsuit to claim that fraud was perpetrated on the federal government.'" CP(S) at 102, 113 (quoting King Fuji's motion to vacate). Rather, the AGO argued, "the CID is focused on investigating King Fuji's possible false and misleading statements and omissions to *U.S. workers*, not the federal government." CP(S) at 102. It explained, "The CID only seeks information about King Fuji's communications and representations to [the U.S. Department of Labor] so the State may compare the representations made to U.S. workers and determine whether those representations were false or omitted material information about the job opportunities." *Id.*

The AGO argued that its CID met a three-part test for reasonableness under the United States Constitution's Fourth Amendment, which the Washington Supreme Court applied to CIDs in *Steele v. State*, 85 Wn.2d 585, 594, 537 P.2d 782 (1975): its inquiry was within the AGO's authority, the demand was not too indefinite, and the information sought was reasonably relevant. On the issue of its authority, the AGO argued that

6

actions of an employer that have the capacity to deceive the general labor pool, such as misleading job postings, violate the CPA.

In King Fuji's reply in support of its motion to vacate, it led by insisting that the superior court must "determine the purpose of the AG's investigation." CP(S) at 118. It argued that "[a]lthough the AG shifts the focus, the stated purpose remain[s] constant," emphasizing the language of the CID that the violations of RCW 19.86.020 under investigation include representations or omissions "to obtain certification that there are insufficient U.S. workers for particular crop production and harvest in the area and permission to hire foreign guest workers." CP(S) at 118 (boldface omitted).

After hearing argument of the cross motions, the trial court denied the motion to vacate and granted the State's motion to enforce the CID. Its order enforcing the CID required the AGO and King Fuji to meet and confer in good faith on the scope of documents and information to be produced by King Fuji and provided that if agreement could not be reached, the court would resolve whatever issues remained. King Fuji appeals both orders.

ANALYSIS

Among conduct that the CPA declares unlawful are "unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. "Trade" and "commerce" are defined by the act to include "any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). The act includes a

mandate that it be liberally construed to serve its beneficial purposes. RCW 19.86.920. The AGO "may bring an action in the name of the state, or as parens patriae on behalf of persons residing in the state, against any person to restrain and prevent the doing of any act . . . declared to be unlawful." RCW 19.86.080(1).

By statute, when the AGO believes a person has documentary materials or knowledge of any information the AGO believes is relevant to the subject matter of an investigation of a possible violation of the CPA, it may serve that person with a CID requiring the person to produce the documentary materials, answer written interrogatories, or give oral testimony. RCW 19.86.110(1). In serving a CID, the only identification of the AGO's investigation and purpose that is required is that the demand "[s]tate the statute and section or sections thereof, the alleged violation of which is under investigation" and that it "[s]tate . . . the general subject matter of the investigation." RCW 19.86.110(2)(a). The demand served on King Fuji identified the violations under investigation as "possible past or current violations of RCW 19.86.020 (unfair or deceptive acts or practices in the conduct of any trade or commerce)." CP(A) at 16. It identified the general subject matter as being such possible past or future violations "including but not limited to representations or omissions to obtain certification that there are insufficient U.S. workers for particular crop production and harvest in the area and permission to hire foreign guest workers." *Id.*

8

King Fuji challenges the CID on the basis that the INA preempts the state law on which the AGO relies and as an unconstitutional search and invasion of its private affairs. We turn to those arguments after first addressing King Fuji's contention that we must regard the AGO as engaged in an improper investigation into its compliance with the federal H-2A program.

I.      THE CID WAS ISSUED IN CONNECTION WITH THE INVESTIGATION OF POSSIBLE MISREPRESENTATIONS TO U.S. FARMWORKERS REGARDING AGRICULTURAL JOB OPPORTUNITIES

In applying to the Thurston County Superior Court for an order prohibiting disclosure of its investigation, the AGO disclosed the information it had received suggesting that King Fuji might be abusing the H-2A program. It broadly identified representations as to which it sought information, including representations King Fuji had made to federal and state agencies. It attached newspaper articles reporting on strikes by King Fuji's H-2A workers complaining of untenable working conditions and retaliation. Seizing on the AGO's statements about suspected abuse of the H-2A program, King Fuji has emphasized below and on appeal that we should view the AGO as making an argument it has never made: that the target of its investigation is suspected violations by King Fuji of federal law and regulations. *See, e.g.*, Appellant's Opening Br. at 15 ("The Purpose of the Civil Investigative Demand is to Improperly Investigate Statements Made to the Federal Government to obtain H-2A Workers." (boldface omitted)).

In reviewing the AGO's presentation to the Thurston County court, we bear in mind the purpose of that presentation. The AGO did not need and was not seeking authorization for its CID. What it felt it *did* need, and was seeking, was court-ordered confidentiality for the CID, which it is entitled to request under RCW 19.86.110(6). The AGO evidently believed that demonstrating that its investigation might reveal violations of federal immigration law by King Fuji and its farm labor contractor in Mexico could help it persuade the court that disclosure would jeopardize its investigation.

The AGO has consistently claimed that it is interested in *misrepresentations made to U.S. farmworkers regarding agricultural job opportunities*, misrepresentations it contends violate the CPA and "have the potential to harm Washington farmworkers and the state labor market." Resp't's Br. at 1.[4] Even if we were to accept King Fuji's characterization of the original submissions to the Thurston County court as "overzealous," Appellant's Opening Br. at 13, the AGO has since made it clear in the trial court and on appeal that it is only misrepresentations made to U.S. farmworkers that it is investigating as violations of the CPA.

---

[4] For example, a declaration in support of the AGO's request for court-ordered confidentiality stated that its CID sought information about "representations made in, and concerning, advertisement and recruitment efforts that are supposed to be designed to fill agricultural labor needs with U.S. workers," and information about "whether interested U.S. workers were turned away by King Fuji Ranch and Affiliated Companies unfairly and/or deceptively." CP(A) at 9.

This is consistent with its investigation as described in the CID. King Fuji argues otherwise, emphasizing that the CID states the AGO is investigating "representations and omissions to obtain certification that there are insufficient workers." CP(A) at 16. While King Fuji's *direct* representations to obtain certification would be to the Department of Labor, "obtain[ing] certification" arguably depended in the first instance on representations and omissions *to U.S. farmworkers*, that would deter them from applying.[5] CP(A) at 16.

In evaluating a party's positions in an appeal, we consider *that party's* good faith argument, not a "straw man" argument foisted on the party by its adversary. We proceed on the basis of what we are satisfied is the AGO's good faith characterization of its investigation.[6]

II.     PREEMPTION

Under the supremacy clause to the United States Constitution, United State law is the supreme law of the land, notwithstanding state law to the contrary. U.S. CONST., art. VI, cl. 2. "Accordingly, state law that conflicts with federal law is 'without effect.'"

---

[5] The CID also states that its investigation concerns misrepresentations "including but not limited to" representations and omissions to obtain certification. CP(A) at 16.

[6] Since the AGO is not engaged in an investigation of violations of the INA, we need not address King Fuji's discussion of case law holding that there is no private right to enforce the INA—a proposition with which the AGO agrees. We also need not address King Fuji's argument, citing RCW 19.86.170, that the CPA does not apply to "transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States."

*Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 78, 896 P.2d 682 (1995) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981)). Courts "do not presume that Congress relishes abrogating state authority," however. *Id.* at 78. "Congress is presumed to respect our system of 'dual governance.' Accordingly, any consideration of preemption issues 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Id.* (alterations in original) (footnote omitted) (internal quotation marks omitted) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)).

Congress may preempt state law in three ways: through express preemption, field preemption, and conflict preemption. *Estate of Becker v. Avco Corp.*, 187 Wn.2d 615, 622, 387 P.3d 1066 (2017) (citing *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 265, 884 P.2d 592 (1994) (plurality opinion)). King Fuji advances argument in support of each.[7]

*Express preemption.* The INA contains express preemption language. 8 U.S.C. § 1188 deals with the admission of temporary H-2A workers, and its subsection (h)(2) provides that "[t]he provisions of subsections (a) and (c) of section 1184 of this title and

---

[7] King Fuji also mentions *San Diego Buuilding Trades Council v. Garmon*, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959), as the source of a preemption doctrine. The *Garmon* doctrine is a special type of conflict preemption that only applies when a state law regulates issues covered by the National Labor Relations Act (NLRA). This case has nothing to do with the NLRA.

the provisions of this section preempt any State or local law *regulating admissibility of nonimmigrant workers*." (Emphasis added.) RCW 19.86.110 is the only state law being applied in this case and it does not regulate the admissibility of nonimmigrant workers. Plainly, 8 U.S.C. §§ 1184(a), (c) and 1188(h)(2) do not preempt it.

King Fuji also cites a federal regulation, 20 CFR § 655.185, that it argues expressly preempts state regulation. The regulation appears in a subpart of federal labor regulations dealing with the labor certification process for H-2A workers. The language on which King Fuji relies provides that "[c]omplaints arising under this subpart" that involve fraud or misrepresentation "must be referred by the [state workforce agency] to the [certifying officer] for appropriate handling and resolution" and complaints alleging that an employer discouraged an eligible U.S. worker from applying, "will be referred to the U.S. Department of Justice, Civil Rights Division, Office of Special Counsel for Unfair Immigration Related Employment Practices." 20 CFR § 655.185(a), (b). The regulation makes no reference to preemption, but King Fuji argues that it necessarily preempts state regulation because it "dictate[s] the exclusive method to address [such] allegations." Appellant's Opening Br. at 25. We disagree; the regulation makes the complaint process mandatory, but it includes no language making it exclusive. King Fuji has identified no court that has ever construed the regulatory complaint process as exclusive.

13

When federal law expressly preempts some state legislation but not the state law at issue, an inference can be drawn that implied preemption is foreclosed. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 289, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995). From the narrow express preemption provided by 8 U.S.C. § 1188(h)(2), one might infer that Congress did not intend any broader preemption. King Fuji nonetheless advances alternative arguments for field and conflict preemption.

*Field preemption.* To effectuate field preemption, Congress must "occup[y] an entire field of regulation to the exclusion of any state laws." *Becker*, 187 Wn.2d at 622 (alteration in original) (citing *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 444, 327 P.3d 600 (2013)). King Fuji's argument for field preemption relies on its characterization of the AGO's investigation as an investigation of fraud on the federal government, which it likens to state "fraud-on-the-FDA"[8] claims that the United States Supreme Court found to be preempted by federal law in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 348, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001).

In *Buckman*, plaintiffs who suffered injuries from the implantation of FDA-approved orthopedic bone screws sued parties who allegedly misled the FDA in obtaining the screws' approval. The screws were given market clearance under a simplified approval process for a limited use that the plaintiffs claimed was bogus, and was not their intended use. *Id.* at 346-47. The plaintiffs alleged that the defendants'

---

[8] United States Food and Drug Administration.

misrepresentations were at least a "'but for'" cause of their injuries: had the

representations not been made, the FDA would not have approved the bone screws, and

the plaintiffs would not have been injured. *Id.* at 343. The Supreme Court found implied

preemption because

> the federal statutory scheme amply empowers the FDA to punish and deter
> fraud against the Administration, and . . . this authority is used by the
> Administration to achieve a somewhat delicate balance of statutory
> objectives. The balance sought by the Administration can be skewed by
> allowing fraud-on-the-FDA claims under state tort law.

*Id.* at 348. The "delicate balance" was between safety, on the one hand, and on the other

hand, the ability for devices to enter the market in a relatively short period of time and the

accepted view that FDA regulations should not interfere with off-label use prescribed by

health care professionals. *See id.* at 349-50.

Congressional intent that the FDA provisions in *Buckman* preempted state law was

found in 21 U.S.C. § 337(a), which the Supreme Court stated provided "clear evidence

that Congress intended that the [medical device amendments] be enforced exclusively by

the Federal Government." *Id.* at 352. 21 U.S.C. § 337(a) provides that subject to

exceptions not relevant in *Buckman*, "all . . . proceedings for the enforcement, or to

restrain violations, of this chapter shall be by and in the name of the United States." The

Supreme Court in *Buckman* also distinguished the plaintiffs' fraud-on-the-FDA claims

from cases where a state claim relies on traditional state law, pointing out that the FDA

15

device approval provisions were a "critical element" of Buckman's and the other plaintiffs' cases. *Id*. at 353.

Here, by contrast, the AGO is investigating possible representations to U.S. farmworkers that job qualifications and requirements existed for positions when those qualifications and requirements were not, in fact, being applied. No provision of federal law akin to the provision in *Buckman* states that this sort of claim must be brought by and in the name of the United States. If the AGO's concerns are borne out by its investigation, its enforcement action will rely on state law—no violation of federal law serves as an element of those claims, let alone as a critical element. Conduct by King Fuji that may have violated the INA might be relevant to proving that job qualifications and requirements were misrepresented to U.S. farmworkers, but it is the *conduct* that will be relevant, not whether or not it violated the INA. Field preemption is not shown.

*Conflict preemption.* Finally, conflict preemption occurs when it is impossible to comply with both state and federal law. *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 800, 225 P.3d 213 (2009). It can also occur when state law "'stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.'" *McKee v. AT&T Corp.*, 164 Wn.2d 372, 387, 191 P.3d 845 (2008) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S. Ct. 615, 78 L. Ed. 2d 443 (1984)). "'[T]he conflict must be an actual conflict, not merely a hypothetical or potential conflict.'"

16

*Satomi*, 167 Wn.2d at 800 (alteration in original) (quoting *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009)).

King Fuji relies on the fact that federal regulations establish remedies for employer misrepresentations in an H-2A application to the federal government that are different from remedies the AGO is able to seek in an action to enforce the CPA. But the AGO is not investigating fraud on the federal government, so there is no conflict. King Fuji does not demonstrate any respect in which a Washington employer is unable to provide accurate information about agricultural job opportunities to U.S. farmworkers at the same time it complies with federal law.

The AGO's authority to issue the CID is not preempted by federal law.

III.    THE CID IS NOT AN UNCONSTITUTIONAL SEARCH OR INVASION OF PRIVATE AFFAIRS

King Fuji's remaining challenge to the CID is that it is an unreasonable and therefore unconstitutional search under the federal constitution or an invasion of King Fuji's private affairs without authority of law under the Washington Constitution. Controlling case law defeats its arguments.

A.    *Fourth Amendment*

It is well settled that where "'(1) the inquiry is within the authority of the agency; (2) the demand is not too indefinite; and (3) the information sought is reasonably relevant,'" a CID issued by the AGO does not violate the Fourth Amendment.

*Ameriquest Mortg. Co. v. Off. of Att'y Gen.*, 177 Wn.2d 467, 498, 300 P.3d 799 (2013)

(quoting *Steele*, 85 Wn.2d at 594).

King Fuji contends that inquiring into false statements made to the federal

government in an H-2A application is not within the scope of the AGO's authority, but

that is not the focus of the AGO's inquiry. The AGO's inquiry is into misrepresentations

to workers about agricultural employment opportunities. *Steele* itself involved the

AGO's investigation of an employment agency, and the Supreme Court found "it is

clear" that an inquiry into possible unfair or deceptive practices by an agency involved in

employment was within the authority of the AGO. 85 Wn.2d at 594.

King Fuji does not contend that the CID is not reasonably clear. *See* Appellant's

Opening Br. at 43-44. *Steele* held that a CID was not impermissibly indefinite where

there was "no general or undiscriminating request for all business records" and the types

of records sought were "explained with reasonable clarity," which is the case with the

CID served on King Fuji. *Steele*, 85 Wn.2d at 594.

King Fuji does contend that the CID seeks information that is not reasonably

relevant, but the only examples of insufficiently relevant information it cites are

"information ranging from the identity of every worker hired since 2015 . . . , every

advertisement placed . . . , steps to contact U.S. workers . . . , selection criteria . . . ,

persons who prepared the H-2A document . . . [,] and U.S. workers not rehired after a

season was complete." Appellant's Opening Br. at 44. Requests for this information

18

appear reasonably calculated to identify what U.S. workers were told about job openings, whether it was accurate, and the employees and applicants who would have relevant information. If there is some information requested that King Fuji can demonstrate cannot conceivably lead to relevant information, the superior court's order provides for a meet and confer process and that it will resolve disputes consistent with its "discovery" related authority under RCW 19.86.110(8) and (9).

No Fourth Amendment violation is shown.

B.      *Article I, section 7*

Under article I, section 7 of the Washington Constitution, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." The provision protects "'those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass.'" *State v. Reeder*, 184 Wn.2d 805, 814, 365 P.3d 1243 (2015) (quoting *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 339, 945 P.2d 196 (1997)). If a private affair is not disturbed, there is no violation of article I, section 7. *Reeder*, 184 Wn.2d at 814. The burden of proving that a private affair has been disturbed is borne by the person asserting the intrusion. *State v. Cheatam*, 112 Wn. App. 778, 787, 51 P.3d 138 (2002), *aff'd*, 150 Wn.2d 626, 81 P.3d 830 (2003).

"Private affairs are not determined according to a person's subjective expectation of privacy because looking at subjective expectations will not identify privacy rights that

citizens have held or privacy rights that they are entitled to hold." *State v. Miles*, 160 Wn.2d 236, 244, 156 P.3d 864 (2007). Instead, courts look at "'the nature and extent of the information which may be obtained as a result of the government conduct' and at the historical treatment of the interest asserted." *State v. Hinton*, 179 Wn.2d 862, 869, 319 P.3d 9 (2014) (quoting *Miles*, 160 Wn.2d at 244).

Division Two of this court held in *State v. Brelvis Consulting LLC* that in determining whether information is a private affair under article I, section 7, "[a] corporation's business records . . . are distinct from personal records" and information that may be "the sort of thing that would be sensitive personal information for a natural person" is not sensitive information "for a legal abstraction like a corporation or LLC." 7 Wn. App. 2d 207, 229, 436 P.3d 818 (2018) (citing *State v. Chase*, 1 Wn. App. 2d 799, 804-05, 407 P.3d 1178 (2017)). In this respect, article I, section 7 is like the Fourth Amendment, under which it is a "well-established proposition that although corporations and business are protected by the Fourth Amendment, the privacy of their books and records is not as stringently protected as is that of the privacy of individuals." *Steele*, 85 Wn.2d at 592-93 (citations omitted).

King Fuji tries to distinguish *Brelvis* by arguing that the CID served on it will require it to reveal "'potentially sensitive personal information'" of individuals, such as their immigration status. Appellant's Opening Br. at 42. But the assertedly private

20

nature of that information is belied by the fact that it is information employers and state workforce agencies are required to collect, report, retain, and make available for audit. Employers are required to keep a recruitment report identifying its recruitment sources, the name and contact information of all U.S. workers who apply or are referred, confirm that the U.S. worker was contacted and specify by what means, and if not hired, explain the lawful reasons for not hiring the U.S. worker. 20 CFR § 655.156. Employers must certify that they have and will continue to retain records of all hires and rejections. 20 CFR § 655.135(a). Information received during the application process and during program integrity measures such as audits may be forwarded to the Office of Foreign Labor Certification to the Wage and Hour Division for enforcement purposes. 20 CFR § 655.130(e). This is manifestly *not* information King Fuji has held and should be entitled to hold "safe from government trespass." *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984).

Moreover, the required authority of law can exist in the form of "a valid (*i.e.*, constitutional) statute." *Reeder*, 184 Wn.2d at 817. King Fuji identifies no constitutional infirmity with RCW 19.86.110, which has authorized CIDs since 1961. LAWS OF 1961, ch. 216 § 11. King Fuji points out that a statutorily-authorized administrative subpoena was found unconstitutional in *Miles* because it was not judicially authorized. But that was because of several concerns not present here: the agency was seeking personal (not business) banking records, from a third party, without notice to the affected individual.

21

The Supreme Court observed that had it not been for those circumstances, the same agency *could have* obtained business information and documents: it "could have requested Miles to submit to an audit of his business records, could have issued the subpoena to Miles to deliver his business records, [and could have] required Miles to submit to a deposition." 160 Wn.2d at 249. Authority of law existed for this CID, which was issued to King Fuji and which King Fuji had the statutory right to challenge before responding.

No violation of article I, section 7 is shown.

IV.    ATTORNEY FEES

The AGO requests an award of reasonable attorney fees and costs under RAP 18.1(b) and RCW 19.86.080(1), and cites *Brelvis*, in which Division Two awarded it fees in a CID enforcement action.

RAP 18.1 allows for attorney fees on appeal if provided for by applicable law. RCW 19.86.080(1) provides that the AGO may bring an action "to restrain and prevent the doing of any act herein prohibited or declared to be unlawful; and the prevailing party may, in the discretion of the court, recover the costs of said action including a reasonable attorney's fee." After giving respectful consideration to Division Two's award of fees and costs in *Brelvis*, we find that these consolidated actions are governed by RCW 19.86.110(8) and (9), not RCW 19.86.080(1). We deny the request for an award of fees and costs.

22

Nos. 37662-1-III and 37689-3-III
*In re Confidential Consumer Protection Investigation*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.